THE TERRITORY OF NEW MEXICO, Appellee, v. RICHARD ROMINE, Appellant.

*January 25, 1881.*

TRIAL BY JURY.    (1) *Whether trial by a jury who speaks only Spanish is.*

INSTRUCTIONS.    (2) *Written in English, but translated orally to Mexican Jury.*

PRACTICE.    (3) *Translation of proceedings to other languages.*

MURDER.    (4) *Instruction as to degree.*

SAME.    (5) *Same as to justifiable homicide*

SAME.    (6) *Verdict, should name degree.*

SAME.    (7) *Verdict assessment of punishment in.*

SAME.    (8) *Instruction as to fourth degree.*

SAME.    (9) *Same as to weight of defendant's testimony.*

SAME.    (10) *Malice and premeditation, proof of.*

1.    The defendant in a criminal case took a change of venue from a county where the English element largely predominated, to one where the Spanish population is very largely in the majority. The jurors who sat in the trial were all Mexicans, and none of them understood the English language, in which the proceedings at the trial took place.

   *Held,* that this was a sufficient "trial by jury," and that there is no law in New Mexico requiring the jurors to speak any particular language.

2.    The instructions were written in English and translated orally to the jury.

   *Held,* that the object of the law requiring instructions to be written was simply to enable them to be preserved in the files, so as to be available for exception or on appeal, and that the oral translation of them to the jury did not render them violative of the law, as being oral instructions.

3.    In all counties where the jury contains members representing each language, or where the persons speaking each are before the court, all the proceedings are to be translated by a sworn interpreter, into the other language from that in which they originally take place.

4.    It is not error for the court to instruct the jury in a murder case, that the killing in question was either murder in the first degree, murder in the fourth degree, or justifiable homicide, where there is no evidence in the case which could bring the case within the definition of any degree not given.

5.    Where the words of an instruction are broad enough to cover all the

Territory of New Mexico v. Romine.

evidence, it is not necessary that the instruction should include both causes of justifiable homicide named in the statute.

6. All verdicts in murder cases should specifically name the degree of murder of which the accused is found guilty, but a verdict of "guilty as charged in the indictment," where the indictment charged murder in the first degree, is sufficient.

7. The provisions of the statute (Gen. Laws, chap. 57, sec. 22, p. 289), that "all issues of fact in a criminal case shall be tried by a jury, *who shall assess the punishment in their verdict*," does not refer to a case of murder in the first degree, wherein the jury need not assess the punishment in their verdict, nor to any other offense the punishment for which is fixed absolutely by the statute, being an undeviating penalty. It refers to offenses the limits of whose punishment are fixed by law, within which a discretion as to the amount of punishment is to be exercised by the jury, according to the circumstances of each case. In such cases only are they to assess the punishment in their verdict.

8. The use of the words "on which some part of the evidence, if true, has some bearing" by the judge in defining murder in the fourth degree to the jury, *held*, not objectionable.

9. An instruction to a jury as to the testimony of defendant in a murder case that "it will be proper for you to consider the fact that he is the defendant, and that, greatest possible temptation is presented to him to testify in his own favor, if he is really guilty" is not erroneous, but the wisest course in similar cases is to instruct the jury generally that they have the right in determining the credibility and weight of evidence, especially where there is a conflict of testimony, to consider the peculiar circumstances or position of any witness which might have the effect of influencing his evidence without selecting the testimony of any particular witness for such comment.

10. Malice and premeditation in a case of murder may be inferred by the jury from actions or words of the accused, or collateral circumstances properly proved before them. There must be *some* evidence of malice or premeditation before the jury to warrant it in finding the defendant guilty of murder in the first degree.

Appeal from District Court of Doña Ana county.

Appellant was indicted at the March term of the district court for killing Patrick Rafferty, on the 16th day of March, 1877, at the county of Grant, in the territory of New Mexico, with a hammer, and was convicted of murder in the first degree.

*S. B. Newcomb* and *Catron & Thornton*, for appellant.

The jurors who sat in the trial of this case were Mexicans, and none of them understood the English language, in which the proceedings at the trial were had. The policy of the common law is, that "Where there is a wrong, there is a remedy," and the common law, as recognized by the United States and the several states of the union, is the rule of prac-tice and decision in the territory of New Mexico in criminal cases: Compiled Laws of New Mexico, sec. 18, page 194. The defendant did not except to the jurors. He had a right to a trial by an English speaking and English understanding jury.: *Lyles v. The State*, 41 Texas, 172, and the cases therein cited. In this case, the learned judge, who delivered the opin-ion, says that the constitution says, "That the right of trial by jury shall remain inviolate." These precise words are found in the "Bill of Rights:" Compiled Laws of New Mex-ico, sec. 5, page 636. He further says, "It (the trial by jury) cannot be considered as remaining inviolate, when the jurors can neither speak, nor understand the language in which the proceedings were had," etc., etc. In *Lyles v. The State*, 41 Texas, 172, the court further say, "A trial by such a jury as sat in this case" (nine of whom did not understand nor speak the English language, in which the proceedings were had) "was violative of section 16, article 1, of the 'Bill of Rights' of the constitution, which declares that, 'No citizen shall be deprived of life, liberty or property,'" etc., etc., going on, giving the exact language, as that found in sec. 15, page 640 of the Compiled Laws of New Mexico, which see.

Sec. 15, page 496, and sec. 21, page 498, Compiled Laws of New Mexico, state what is necessary to parties "liable to be chosen and to serve as grand and petit jurors," etc.

Such persons are not competent jurors, however, unless they can speak and understand the language, in which the proceedings are had on the trial. If such were intended it

would be null and void. See *Lyles v. The State*, 41 Texas, 172, and also sec. 5, page 636, "Bill of Rights," Compiled Laws of New Mexico, and sec. 15, page 640, *Id.*, also 8 Ala., 302.

The instructions to the jury were written in the English language and orally interpreted to the jury in the Spanish language. See 41 Texas, 172, and sec. 1, page 200, Compiled Laws of New Mexico, which declares that the instructions shall be in writing.

If the instructions were orally interpreted to the jurors, they were oral instructions—nothing but verbal instructions, and contrary to the law. To instruct the jurors in writing was a duty imposed upon the presiding judge, by the statutory law governing his judicial acts, and a right to which the defendant was entitled and could not waive. The purpose of instructing in writing is that the jury may see them while deliberating, and by verbal interpretation they cannot properly catch and retain them, and for this reason the law orders that they be given in writing, and therefore, any procedure which is a violation of the spirit of this law is an injury to the defendant. The law says that in a trial of this kind, certain acts shall be performed by the presiding judge. The law for wise purposes says the jurors shall be instructed in writing, and he disregards what the law says, and a plain and imperative duty is neglected, and the jurors are verbally instructed.

The defendant need not except; in a capital case he stands upon all his rights and waives nothing, and he is not required to instruct the court as to what are and what are not its duties, and if the plain letter and spirit of the law is not complied with, this dereliction is not chargeable to the defendant, and the case must be reversed because of this error: *Nomaque, an Indian, v. The People*, Breese (Ill.), 145; *People v. McKay*, 18 Johns. (N. Y.), 212.

"In a capital trial, if error intervene, it must be assumed

to be injurious to the prisoner, and he is entitled to a reversal of judgment.    The courts have no power to affirm the case: *People v. Williams*, 18 Cal., 187."

The court erred in commenting upon the evidence of appellant: Page 428 " Albany Law Journal," May 31st, 1879; *Veatch v. State*, 56 Indiana, 584 ; 26 Am. Rep., 44.

The court erred when it told the jury that the evidence showed the offense to be either murder in the first degree, or murder in the fourth degree, or that the killing was justifiable, because it invades the especial province of the jury, and takes from the consideration of the jurors the other degrees of criminal homicide, a right to which the defendant is entitled.    See *The State of Iowa v. Ezra C. Clemons*, " Northwestern Reporter," vol. 1, p. 82 (No. 9 New Series), which says, " All the degrees of criminal homicide should be explained and submitted to the jury. ' *   *   *   The degree of the crime is to be determined by the jury, and not by the court, and there can be but one rule for the court, in all cases."    See also 41 Texas, 172.

'The court erred, when it told the jury what the evidence tended to show, and on what points certain evidence had some bearing : *Bill v. The People*, 14 Ill., 432 ; *Bond v. The People*, 39 Ill., 26 ; *Kennedy v. The People*, 44 Ill., 283 ; *Hopkins v. The People*, 18 Ill., 264; *Morrison v. The State*, 41 Texas, 516 ; *Bishop v. The State*, 43 Texas, 390 ; *Rice v. The State*, 3 Ct. of App., 451 ; *Haskew v. The State*, " Texas Law Journal," November 26th, 1879, published at Tyler, Texas.    Opinion filed November 12th, 1879.  Note the following extracts from the instructions :  First, the judge says, "From the evidence before you, if the defendant is guilty of murder in any of the degrees designated by law, it must be either murder in the first degree or murder in the fourth degree."  Then, further on, he says : " Murder in the fourth degree, on which some part of the evidence, if true, has some bearing, consists," etc.

This tells the jury that the defendant's evidence is false, and, therefore, there is no evidence to show it to be in the fourth degree. Is this the law? Is it just and fair? The jury are to pass untrammelled upon the credibility of the witnesses and the bearing of the evidence. Then, again, "If the defendant actually killed Rafferty, then the case, as presented by the evidence, is either murder in the first degree or murder in the fourth degree, or the killing was justifiable." Again, "If the killing was justifiable, then the case, as presented by the evidence," etc. If this is the law, what is the province of the jury? What figure do juries cut in legal investigation? Finally, the court says: "You have heard his statement of the case. In determining the question as to whether the defendant has told the truth, and all the truth, as to the position of the deceased at the time he received the fatal blow, and in reference to all the circumstances, it will be proper for you to consider the fact that he is the defendant, and that the greatest possible temptation is presented to him to testify in his own favor, if he is really guilty."

This is not proper as an instruction from the court. It ignores the reasonableness or unreasonableness of his statement, taken in connection with the other circumstances proved by other evidence.

In a capital case, when the instructions do not announce correct legal principles, or, being correct, do not apply to the case, though no exceptions are taken to them, the appellate court, in the face of the record, will not pronounce sentence of death on the prisoner, but will award a new trial: *Falk v. The People*, 42 Ill., 331; *Schlenker v. The State*, Supreme Court of Nebraska, October 15th, 1879, Northwestern Reporter, vol. 2, New Series, p. 710. In criminal cases, where life is at stake, it is not required that the evidence be palpably insufficient to warrant a conviction, before an appellate court will reverse, the rule being different in civil and

criminal cases, and especially where life is at stake : *Falk v. The People*, 42 Ill., 331.

If the prisoner was guilty the evidence would have equally well applied to murder in the third or fifth degrees as to murder in the first and fourth : Comp. L., secs. 12 and 13, p. 320.

The court should also have instructed as to both causes of justifiable homicide. The first cause being equally applicable to the case with the second : Comp. L., sec. 5, 1st and 2d ed., p. 313.

The jury should have assessed the punishment : Comp. L., sec. 22, p. 372; *People v. Bonney*, 19 Cal., 446; *People v. Bonney*, 40 Cal., 129 ; *People v. Marquis*, 15 Cal., 38 ; *People v. Nichols*, 34 Cal., 217.

Premeditation must be proven, and cannot be presumed from the mere fact of killing : *Stoakes v. People*, Thompson's Cases, 931.

*W. L. Rynerson* and *Wm. Breeden*, for appellee.

The jury was a lawful one ; whether they understood English or not is of no consequence. If this were a valid objection it was waived by the defendant in consenting to go to trial and failing to challenge the jurors on that ground : 1 Bish. Crim. Law, 995, *et seq.*, and particularly sec. 997 and authorities there cited.

It was not necessary that the verdict should fix the punishment. The indictment charged murder in the first degree, and the verdict was guilty as charged, that is, guilty of murder in the first degree. The punishment of this offense is absolutely fixed by law, and the jury could not change it and had nothing to do with it : Compiled Laws of New Mexico, sec. 2, p. 318. Where the jury is required by statute to fix the punishment and has a discretion as to the character or amount of punishment, the verdict should fix the punishment, but not otherwise, and in this case if the jury had assumed to fix the punishment, that portion of the verdict

Territory of New Mexico v. Romine.

would have been surplusage: 1 Bish. Proced., 838; 2 *Id.*, 625.

There was no error in commenting upon the evidence by the judge. He had a right to say to the jury what he did say: 34 Cal., 191. This was the common-law rule which governed at the trial of this cause: Compiled Laws of New Mexico, sec. 188, p. 194.

It was the province of the court to give to the jury the law applicable to the facts of the case. There was no error in the refusal or failure of the court to instruct as to the third and fifth degrees. And the instruction given by the court as to the justifiable homicide, comprehended all that the defendant was entitled to: 6 Cal., 214; 31 Ga., 424; 27 Cal., 507; 18 Tex., 343; 32 Cal., 280; 8 Cal., 89; 31 Mo., 147.

Premeditation or malice aforethought, is not susceptible of direct proof, but is to be presumed or its existence determined by all the facts and circumstances connected with the case and the conduct of the defendant: 65 Ill., 17; 17 Cal., 369.

The instructions were in writing as shown by the record and the law in that respect was complied with.

PRINCE, Chief Justice: This is an appeal from a judgment of the third district court, sitting in the county of Doña Ana.

The defendant was indicted in Grant county, at the July term in 1877, for the murder of Patrick Rafferty.

Thereafter, on application of the defendant, the venue was changed to the county of Doña Ana.

The case came on for trial at the June term in 1878, in said court.

At this trial, after the charge of the judge, the defendant's counsel took exceptions to certain parts thereof relative to the testimony of defendant.

The jury brought in a verdict of "guilty as charged in the indictment," and thereupon the defendant moved for a new trial.

The motion was denied, and the defendant appealed to this court.

The first point relied on by the defendant in his brief is that "the jurors who sat in the trial were all Mexicans and none of them understood the English language in which the proceedings at the trial were had."

It appears by the bill of exceptions that this is true, and that the instructions to the jury were written in English and orally interpreted to them in Spanish; and that all the proceedings were similarly interpreted, the translation being made in all cases by an interpreter previously duly sworn.

The defendant claims that this was error for two reasons:

*Firstly*. That trial by a jury not understanding English was not "trial by jury," as understood at common law, or contemplated by the bill of rights.

*Secondly*. That the instructions to the jury were really given orally, being translated, and were thus in violation of law.

As to the first of these propositions it may be said that the qualifications of jurors in New Mexico were fixed by the act of February 2, 1859 (Compiled Laws, 496), and at the time of this trial had been unaltered for nearly twenty years. That act, in section 157, specifically provided that "all white persons," having certain qualifications of age, citizenship, etc., shall "be liable to be chosen and serve as grand and petit jurors;" and among these qualifications the ability to speak any particular language is not named.

Under this law juries were selected for over twenty years, embracing both Spanish and English speaking members, without any objection or any change being made in the law, or action taken by the congress of the United States. Since the trial of this cause below, in the year 1880, a new jury

Territory of New Mexico v. Romine.

law was enacted by the legislature, but it made no alteration in this respect, though the fact that large numbers of Spanish speaking citizens, who understood no English, were annually called to serve on juries, it was known undoubtedly to every member, so that there can be no doubt as to the legislative intent.

We cannot shut our eyes to the peculiar circumstances of this territory, taken from the Republic of Mexico in 1846, and nearly all of whose inhabitants in the years first succeeding the annexation, understood no English. Even at the present time the preponderance of Spanish speaking citizens is very large; and in certain counties the English speaking citizens possessing the qualifications of jurors, can be counted by tens instead of hundreds. In at least three of the courts of the territory at the time of this trial below, it may be said without hesitation, that a sufficient number of English speaking jurors could not have been obtained to try any important case which had attracted public attention.

Apart from the impracticability of obtaining English speaking juries, it would have been manifestly unjust to the great majority of the people of the territory, had such a requirement as to language been made. Either they would have had to be tried in a language which they did not understand, or else a double system would necessarily have been established, including an English speaking jury for English defendants, and a Spanish speaking jury for Spanish defendants; and if the theory had been carried to its logical conclusion, an English speaking judge to address the English jury, and a Spanish speaking one to instruct the Spanish jury.

The practice under the territorial law has been uniform for a long series of years, and works as little injustice to any parties, whatever their language, as any system that could well be devised under the prevailing conditions. In all counties where the jury contains members representing each

language, or where persons speaking each are before the court, all the proceedings are translated by a sworn. interpreter, who is a court officer, into the other language from that in which they originally take place. Thus, every one interested is as fully as possible informed of every proceeding, and no injustice is done.

In the case before us, this course was pursued. There is no allegation or suggestion that there was any incorrect interpretation; indeed, there is nothing in the record or the bill of exceptions, to show whether the defendant himself speaks Spanish or English. If, as we infer from the argument, he is an English speaking citizen, then it was by his own act in demanding a change of venue, that the case was brought from a county where the English element largely predominated on the juries, to one where the Spanish population is very greatly in the majority.

We do not think that there is anything in the law which makes the fact of not understanding the English language a disqualification for a juror in this territory, or which gives to any defendant the right to be tried by jurors of any particular nationality or language.

As to the second point, regarding the written instructions to the jury, the argument of defendant's counsel is that the instructions being written in English, and translated to the jury in Spanish, they were really orally given; and, further, that the intent of the law was that the jury might see them while deliberating, and if only given to them orally that intent was defeated.

If the object of the law were as suggested by counsel, there might be something in this point; but that object, as shown by the context, was entirely different, being that the instructions should be filed with the papers in the case, so as to be available for exception or on appeal. In fact, at the time of the trial below, and until the passage of the Practice Act of 1880, there was no authority for allowing the jury to

take the judge's instructions with them when they retired for consultation.

The law was fully complied with by the instructions being written by the judge, so as to be preserved on file; and there was no error in this respect.

The next cause for reversal assigned by the defendant, is that the court erred in stating in the charge to the jury that the killing in question was either murder in the first degree, murder in the fourth degree, or justifiable homicide. ·

The law with regard to this we have recently stated quite at length, in the opinion rendered in the case of *The Territory v. Young, ante,* p. 93, and so we do not repeat it here.

As there said, if there is any evidence whatever which could bring the case within the definition of any degree not given, the limitation of the degrees in the charge to the jury would be error which would be good cause for reversal. But we have examined the evidence before us in this case with much care, and fail to see any under which the degree of murder could be other· than the first or the fourth, if a crime be proved at all. The definitions given by the judge of those degrees, and of the circumstances under which such a killing would be justifiable, substantially coincide with the statute, and could not have misled the jury. One of the "additional points" of the defendant is that the instruction regarding justifiable homicide should have included both causes named in the statute; but we think the words used are broad enough to cover all the circumstances possible under the, evidence.

The next point raised, and upon which a large amount of argument was expended, was as to the form of the verdict; which is claimed to be insufficient and contrary to law, both because it does not designate the precise offense of which the jury found the defendant guilty, and also because the jury did not assess the punishment therein.

The record shows that the indictment is in the usual form

of an indictment for murder in the first degree, including all the allegations required by the statute to constitute that crime.

It is conceded on all hands that under such an indictment, a jury can either find the defendant guilty of the crime charged, or of any lower crime the necessary constituents of which are included in the indictment. This is a general and elementary principle of criminal law.

The judge in his charge instructed the jury that under the evidence, three, and only three, verdicts could properly be returned, and these were respectively in case the jury should believe the defendant guilty of murder in the first degree, or in the fourth degree, or that the homicide was justifiable. He instructed them that if they found the defendant guilty of murder in the first degree, their verdict should be simply " guilty ;" if in the fourth degree, their verdict should be that they " find him guilty of murder in the fourth degree, naming the degree in the verdict," and assessing the punishment within the statutory limits. If they entertained any doubt of his guilt in one of the degrees, then their verdict should be " not guilty." This made the distinction very clear and forcible, and if under such instructions, the jury should simply have returned a verdict of " guilty, " there could have been no doubt of their intention to find the defendant " guilty " in the first degree.

The verdict which they did bring in was " guilty as charged in the indictment." This, in our opinion, is stronger and more certain even than the verdict of " guilty " would have been. The indictment charged murder in the first degree. It charged the defendant with the felonious killing of Rafferty, from a premeditated design to effect the death of said Rafferty.

If there could have been any doubt as to the verdict, if it had been simply in the words suggested by the court, that doubt is removed by the additional words used by· the jury.

Territory of New Mexico v. Romine.

Such a verdict under such an indictment, and especially in view of the judge's charge, can mean nothing else than murder in the first degree ; and considering the peculiar wording of our statute, which nowhere expressly mentions the first degree of murder by name in its definition, was perhaps the very best and strongest way in which the jury could have expressed their opinion. While fully satisfied that this is a good verdict, for murder in the first degree, yet it may not be out of place to suggest that to avoid question and discussion, it may be better in the future, that all verdicts in murder cases should name the degree specifically.

The next point is that the jury should have named the punishment in their verdict. This is claimed under the provision in our statutes (chap. 57, sec. 22), which reads as follows : "All issues of fact in a criminal case shall be tried by a jury, who shall assess the punishment in their verdict :" General Laws, 289.

We have had occasion to refer to this provision somewhat in the recent case of *The Territory v. Young, ante,* p. 93, and have stated there to some extent our view of its intention and scope; but it may be best to consider the matter here more fully as the connection is somewhat different.

In our criminal law as in most others, the punishment for some offenses is fixed absolutely by the statute, being an undeviating penalty. Such, for example, is the punishment of death for murder in the first degree, and imprisonment for life under our definition of murder—the second degree. But for most offenses, a sliding scale of punishment is provided, so that in each case the penalty can be proportioned somewhat to the peculiar circumstances involved. This is a proper and beneficent system which has obtained in almost every criminal code, and in our statutes finds its strongest example in the penalty for murder in the fifth degree, where the option extends from a fine of a single dollar to imprisonment for ten years.

Now, some authority must have power, after it has been determined that a person is guilty of one of these crimes, for which such a sliding scale of penalties is provided, to consider the circumstances of the case and determine what penalty within those limits fixed by law shall be inflicted; to use the technical words of our statute, to "assess the punishment."

In most, if not all of the older states, this is done by the judge presiding; in New York two local justices are associated with him for this purpose, and in such cases the jury simply finds the offense of which the accused is guilty, and nothing more; the punishment, within the limits prescribed by law, is entirely for the court.

But in our territory this power is given to the jury. They are to assess the punishment, wherever such assessment is necessary, as well as find the crime of which the accused is guilty.

The intent of the section above quoted was simply to give this power to the jury, which ordinarily had been exercised by the court. But it refers, of course, to cases where an assessment is to be made; where there is some penalty to be determined; where there is some option and discretion to be exercised. And this includes the great majority of crimes to which, by our statutes, a sliding scale of penalties is affixed. Here the jury is to "assess the punishment" within, of course, the limits provided by law.

But in the case of those few crimes for which the statute absolutely fixed one unchangeable penalty, there is nothing to be "assessed" either by the judge or the jury. The penalty is established by the law, and it would be absurd to talk of assessing that which is unalterably fixed and determined.

Had the verdict been "guilty of murder in the fourth degree," it would have been necessary for the jury to have "assessed the punishment," because the penalty for that crime is not established by law, except as to its limits, and

within those is left to the jury.    But for murder in the first degree, the law itself fixes the penalty unalterably, and no action of the jury could ratify or strengthen it.    The statute in this particular instance even goes on to provide the duty of the governor in case of conviction.

Were this not entirely clear, the practice of the courts for nearly thirty-five years, since the promulgation of the Kearney code, of which this section, as to the power of the jury to assess, is a part, would be sufficient to guide us.    But, in our opinion, there can be no doubt that that section only applies to those crimes whose penalties are capable of being assessed, that is to say those for which the punishment may be more or less, within certain statutory limits.

Another point raised by the defendant's counsel is that the use of the words " on which some part of the evidence, if true, has some bearing," by the judge, in giving a definition of murder in the fourth degree, was improper, and might prejudice the jury, but this, we think, is not a valid objection.    The words really added nothing to the sense, as the fact of charging as to that degree at all implied that some part of the evidence, if true, had some bearing thereon, and we fail to see any way in which their use could have been injurious to the defendant.

A much stronger objection is urged against the part of the judge's charge in which he referred to the evidence given by the defendant himself.    This is in the following words : " The defendant himself was admitted as a witness before you.    You have heard his statement of the case.    In determining the question as to whether the defendant has told the truth, and all the truth, as to the position of the deceased at the time he received the fatal blow, and in reference to all the circumstances, it will be proper for you to consider the fact that he is the defendant, and that greatest possible temptation is presented to him to testify in his own favor, if he is really guilty."

At the time of this trial, the new practice act, which provides that the court " shall not comment upon the weight of the evidence " (Laws of 1880, chap. 6, sec. 23), had not been passed, and the rules of the common law governed in criminal cases, under sec. 18 of the act of July 12, 1851, General Laws, page 118.

We think it is the wisest course in similar cases to instruct the jury generally, that they have the right in determining the credibility and weight of evidence, especially where there is a conflict in the testimony, to consider the peculiar circumstances or position of any witness which might have the effect of influencing his evidence, without selecting the testimony of any particular witness for such comment; but under the law as it was at that time, full as strong expressions, with regard to the testimony of parties on trial, as were used in the court below, have been upheld by the courts, as in the case of ————— v. —————, 34 Cal., 191.

Whatever might be the case with such language if used under the new law, we do not think that the instruction, as given at the time of this trial, was error.

Two other points raised by the defendant may be considered together. They are:

*First.* That malice must be proved and not inferred.

*Second.* That premeditation must be proved and not presumed.

These propositions may be true if they are intended to mean that there must be some evidence in the case from which the jury can conclude that there was malice and premeditation ; but they are not true if intended to mean that malice and premeditation must be proved directly by evidence. They are both matters which are within the breast of the person accused, and peculiarly within his own personal consciousness. They are not visible and tangible objects, or events that can be proved by ordinary witnesses, as something more substantial might be. No one but the

accused himself can testify directly from absolute personal knowledge that they exist; and so there can be no direct evidence of their existence, except from his statements either on the trial or testified to as admissions. The jury has the right to infer their existence from actions or words of the accused, or collateral circumstances properly proved before them; and without this right, in the majority of cases, it would be impossible to prove them at all. We think there was no error in the case at bar with regard to this subject.