# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:  2013-NMSC-038

Filing Date:  August 12, 2013

Docket No. 32,597

STATE OF NEW MEXICO,

       Plaintiff-Appellee,

v.

MICHAEL ANTHONY SAMORA,

       Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Kenneth H. Martinez, District Judge

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
Yvonne Marie Chicoine, Assistant Attorney General
Santa Fe, NM

for Appellee

## OPINION

**DANIELS, Justice.**

{1}    Defendant Michael Samora was convicted of first-degree murder and other crimes for the bludgeoning death of his girlfriend and a subsequent robbery and stabbing at an Albuquerque convenience store.  One of Defendant's primary issues in his direct appeal to this Court is whether his convictions should be reversed as a result of the district court's excusal of a Spanish-speaking prospective juror who had difficulty understanding the English language.  While we agree with Defendant's argument, made for the first time on appeal, that the juror's dismissal violated Article VII, Section 3 of the New Mexico

1

Constitution, we hold that the unpreserved error was not the kind of fundamental error that requires reversal of a conviction without a party's raising the issue in the trial court. We also hold that Defendant's remaining challenges are without merit. Accordingly, while we affirm Defendant's convictions, we stress to trial judges and lawyers that they have a shared responsibility to make every reasonable effort to protect the right of our non-English-speaking citizens to serve on New Mexico juries.

## I.      FACTS AND PROCEEDINGS

**{2}**      Defendant's appeal is based primarily on the dismissal of Mr. Rojelio Haros from Defendant's jury pool. During voir dire, the district court noted that Mr. Haros had written in his jury questionnaire that he did not "understand English [well] enough to write in English" and asked him if he understood English well enough to proceed with jury selection without the aid of an interpreter, stating that the interpreter that had been requested by the court mistakenly ended up in another courtroom. When Mr. Haros stated that he had been able to follow the discussions to that point, the court promised to provide an interpreter should Mr. Haros be selected as a juror.

**{3}**      At the conclusion of voir dire, when the court asked Mr. Haros if he had been able to follow the voir dire exchanges, Mr. Haros admitted that there was a large part of it that he had not understood. When the court proposed to excuse Mr. Haros for cause, defense counsel objected, not because the inability to understand English could not provide a lawful basis for dismissal but on the theory that Mr. Haros understood English well enough to serve without an interpreter during voir dire. The State argued that Mr. Haros should be removed. The court ultimately dismissed Mr. Haros, concluding that Mr. Haros had been unable to participate in voir dire in a meaningful way.

**{4}**      On appeal, Defendant argues that his conviction should be reversed because Mr. Haros's dismissal violated Article VII, Section 3 of the New Mexico Constitution, which resulted in a denial of Defendant's constitutional right to be tried by a fair and impartial jury. Defendant also argues that his conviction should be reversed based on violations caused by (1) the late disclosure of DNA evidence, (2) being denied an expert witness, (3) inappropriate testimony by a witness, (4) ineffective assistance of counsel, (5) trial delays, and (6) cumulative error. Because Defendant was sentenced to life imprisonment, this Court has exclusive jurisdiction to hear his direct appeal. *See* N.M. Const. art. VI, § 2 ("Appeals from a judgment of the district court imposing a sentence of death or life imprisonment shall be taken directly to the supreme court."); *accord* Rule 12-102(A)(1) NMRA.

## II.     DISCUSSION

### A.     Excusal of a Juror for Inability to Understand English Was Error but Not Fundamental Error Requiring Reversal in the Absence of Preservation

**{5}**      Article VII, Section 3 of the New Mexico Constitution guarantees that "[t]he right

2

of any citizen of the state to . . . sit upon juries, shall never be restricted, abridged or impaired on account of . . . [the] inability to speak, read or write the English or Spanish languages except as may be otherwise provided in this constitution." While we agree that Mr. Haros's dismissal in the circumstances before us violated that constitutional provision, the unpreserved error does not warrant reversal of Defendant's conviction under the fundamental error standard.

1. **Mr. Haros's Dismissal Violated Article VII, Section 3 of the New Mexico Constitution**

**{6}** We begin our analysis by examining whether the dismissal of Mr. Haros violated the New Mexico Constitution. We review constitutional claims de novo. *See State v. Pacheco*, 2007-NMSC-009, ¶ 12, 141 N.M. 340, 155 P.3d 745 (reviewing de novo the two interrelated constitutional rights of a non-English-speaking citizen to serve on a jury and a defendant's right to a fair and impartial jury).

**{7}** This Court has recognized more than once that Article VII, Section 3 unambiguously protects the rights of non-English speakers to serve on our state juries. *See State v. Rico*, 2002-NMSC-022, ¶ 5, 132 N.M. 570, 52 P.3d 942; *see also Pacheco*, 2007-NMSC-009, ¶ 13 (interpreting Article VII, Section 3 as applying to jury deliberations as well as to trials). This unique right has been a part of our judicial history since our territorial days. *See Territory v. Romine*, 1881-NMSC-010, ¶¶ 11, 14, 2 N.M. 114 (addressing an 1859 statute that lacked any language requirement for jury service and noting that "[a]part from the impracticability of obtaining English-speaking juries, it would have been manifestly unjust to the great majority of the people of the territory, had such a requirement as to language been made"). Today, the right is enshrined in our state Constitution as one of the few provisions that can be amended only by a supermajority of both legislators and voters. *See* N.M. Const., art. XIX, § 1 ("No amendment shall restrict the rights created by Section[] . . . Three of Article VII . . . unless it be proposed by vote of three-fourths of the members elected to each house and be ratified by a vote of the people of this state in an election at which at least three-fourths of the electors voting on the amendment vote in favor of that amendment.").

**{8}** In order to protect the rights guaranteed by Article VII, Section 3, we have emphasized that New Mexico courts are required to "make *every reasonable effort* to accommodate a potential juror for whom language difficulties present a barrier to participation in court proceedings." *Rico*, 2002-NMSC-022, ¶ 11 (emphasis added). In explaining what we meant by "every reasonable effort," we cautioned that "inconvenience alone will not suffice; a trial court shall not excuse a juror on the basis of an 'inability to speak, read or write the English or Spanish languages' absent a showing that accommodating that juror will create a substantial burden." *Id.* ¶ 12 (quoting N.M. Const. art. VII, § 3). And we went further to provide examples of the factors that may be relevant to the reasonable efforts standard:

3

What constitutes sufficiently reasonable efforts will depend on the circumstances in which the problem arises. Whether a reviewing court will find a trial court's efforts in this regard reasonable will depend on several factors, including, but not limited to, the steps actually taken to protect the juror's rights, the rarity of the juror's native language and the difficulty that rarity has created in finding an interpreter, the stage of the jury selection process at which it was discovered that an interpreter will be required, and the burden a continuance would have imposed on the court, the remainder of the jury panel, and the parties.

*Id.*

**{9}**  In *Rico*, this Court vacated the judgments of two defendants because the district courts failed to provide Navajo interpreters for prospective jurors, even though the nearest interpreter was two and a half hours away. *Id.* ¶¶ 1-2. In determining that the efforts by the district courts were insufficient, we explained that when a trial court becomes aware of a language problem, the court

should first take steps to determine whether the difficulty will prevent the juror from following the proceedings. Then, the trial court must take steps to ensure the availability of a suitable interpreter, if an interpreter is needed. If an interpreter is needed and not available, the court is under a constitutional obligation to continue the trial for a reasonable time if the continuance will be effective in securing an interpreter.

*Id.* ¶ 16.

**{10}**  Here, unlike in *Rico*, Defendant's trial took place in the Second Judicial District Court, the most populous district in our state, where a Spanish interpreter should have been readily available. At a minimum, voir dire should have been continued until the misdirected interpreter was brought to the correct court or a replacement interpreter secured. *See id.* ¶ 15 (noting that when "the language for which an interpreter is needed is one commonly spoken in the jurisdiction, particularly when it is one in which interpreters are specially trained, and no interpreter is available on the first scheduled day of the trial, the trial should be continued for a reasonable time in order to secure an interpreter").

**{11}**  The record before us does not document what, if any, efforts the court made to secure an interpreter. Merely stating that an interpreter was requested but unavailable provides an appellate court little insight into what the judge may or may not have done to remedy the situation. *See id.* (explaining that the duration of a continuance appropriate to satisfy the every reasonable effort standard depends on the totality of the circumstances).

**{12}**  Because the record reflects that after determining that Mr. Haros did not understand all of the voir dire exchanges, the district court made no further effort to find an interpreter

4

for Mr. Haros before dismissing him, we conclude that the court violated Article VII, Section 3.

## 2.      Defendant's Unpreserved Error Is Not Fundamental Error

**{13}**    Having concluded that the district court violated Mr. Haros's constitutional right, we review whether the violation requires the reversal of Defendant's conviction.

**{14}**    With few exceptions, we review an issue for reversible error only when the defendant has properly raised the issue in the district court. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked . . . ."); *accord Mitchell v. Allison*, 1949-NMSC-070, ¶ 14, 54 N.M. 56, 213 P.2d 231 ("Unless the trial court's attention is called in some manner to the fact that it is committing error, and given an opportunity to correct it, cases will not be reversed because of errors which could and would have been corrected in the trial court, if they had been called to its attention.").

**{15}**    We have specifically applied this contemporaneous objection requirement to the unconstitutional exclusion of a juror for lack of fluency in English. *See Rico*, 2002-NMSC-022, ¶ 8 (noting "that a criminal defendant who does not object to an exclusion of a juror in violation of Article VII, Section 3 has waived his or her ability to do so on appeal"). When Article VII, Section 3 is violated and the objection properly preserved, an appellate court is required to reverse what would have been an otherwise valid conviction. *See Rico*, 2002-NMSC-022, ¶¶ 1, 3 (vacating two convictions and remanding for retrial in both cases based on improper juror dismissals in which the state conceded the issue of reversible error).

**{16}**    In this case, the trial judge clearly notified counsel for both Defendant and the State that he was considering dismissing Mr. Haros. The only argument the defense made was that Mr. Haros should remain on the jury because he understood English well enough without an interpreter. Significantly, Defendant did not raise the issue of a violation of Article VII, Section 3, or object to the exclusion of a juror for inability to understand English, or object to the failure of the district court to exercise every reasonable effort to procure an interpreter. Accordingly, Defendant's Article VII, Section 3 issues were not preserved. Because Defendant did not preserve Mr. Haros's right to serve on a jury under Article VII, Section 3, we review only for fundamental error. *See* Rule 12-216(B)(2) (recognizing fundamental error as an exception to the preservation rule).

**{17}**    "The exacting standard of review for reversal for fundamental error requires the question of guilt [be] so doubtful that it would shock the conscience [of the court] to permit the verdict to stand." *State v. Swick*, 2012-NMSC-018, ¶ 46, 279 P.3d 747 (reversing a second-degree murder conviction for fundamental error because a missing element in the jury instructions created an ambiguous verdict, *see id.* ¶ 58) (alterations in original) (internal quotation marks and citation omitted). Here, Defendant fails to demonstrate how the question of his guilt is so doubtful that his convictions should shock the conscience of this

5

Court. There is nothing in the record that indicates Defendant was convicted by an unfair or partial jury, notwithstanding Mr. Haros's improper dismissal, and the evidence of Defendant's guilt was substantial. *See State v. Baca*, 1983-NMSC-049, ¶ 9, 99 N.M. 754, 664 P.2d 360 ("The burden of establishing partiality [of a juror] is upon the party making such a claim."); *State v. Singleton*, 2001-NMCA-054, ¶ 19, 130 N.M. 583, 28 P.3d 1124 (rejecting a defendant's claim of fundamental error because the "[d]efendant has not shown that he was prejudiced in any way by the juror's excusal"). Accordingly, we hold that Defendant's conviction does not warrant reversal under the fundamental error standard.

{18}    Although the constitutional violation in this case does not result in the reversal of an otherwise valid conviction, as would have been required if defense counsel had preserved the issue properly, we stress that judges and attorneys on both sides of the courtroom have responsibilities in protecting a non-English-speaking juror's constitutional right to participate in jury service. The appellate record must demonstrate that a trial judge has made every reasonable effort to provide interpreters for non-English-speaking jurors; defense attorneys must raise the unconstitutionality of proposed dismissals of jurors for lack of fluency in English; and prosecutors representing the State must protect the rights of all non-English-speaking New Mexicans to serve on juries, both because it is their duty to do so and because an otherwise unnecessary reversal and retrial may well be the consequence of denying those rights.

## B.    Defendant's Other Issues Are Insubstantial

{19}    Defendant raises six additional challenges to his conviction, none of which we determine to be meritorious.

### 1.    Disclosure of DNA Reanalysis

{20}    Defendant argues that the State should be sanctioned because of the disclosure of a second DNA report two weeks before the 2008 trial. The report included the results of DNA reanalysis of physical evidence after disclosure to Defendant in 2005 of the results of the original analysis. However, Defendant did not object to the timing of the second disclosure, and the issue is therefore unpreserved for appellate review. In addition, Defendant does not demonstrate in any way how the timing of the supplemental disclosure harmed his ability to defend himself at trial. *See State v. Duarte*, 2007-NMCA-012, ¶ 15, 140 N.M. 930, 149 P.3d 1027 ("Failure to disclose a witness' identity prior to trial in itself is not grounds for reversal. Defendant has the burden of showing that he was prejudiced by the untimely disclosure." (internal quotation marks and citation omitted)), *recognized by this Court in State v. Harper*, 2011-NMSC-044, ¶ 19, 150 N.M. 745, 266 P.3d 25. Because Defendant did not preserve the issue or demonstrate prejudice, Defendant's late disclosure argument is without merit.

### 2.    Lack of Defense DNA Expert

**{21}** Relying on *State v. Brown*, Defendant argues that the district court erroneously denied his motion for a new trial based on a claimed violation of his right to a DNA expert to assist in his defense. *See* 2006-NMSC-023, ¶ 31, 139 N.M. 466, 134 P.3d 753 (holding that the right to effective assistance of counsel for indigent defendants, including defendants assisted by private counsel providing pro bono legal services, includes the right to state funding for necessary expert witnesses). Defendant does not cite anything in the record demonstrating that he requested the district court to order expert assistance, and we have found nothing in our own review. Accordingly, Defendant's argument that he should have been granted a new trial because he lacked a DNA expert is without merit.

### 3.    Improper Comment by State Witness

**{22}** Defendant argues that the district court improperly denied his motion for mistrial because the State's bloodstain pattern expert impermissibly referred to seeing "brain matter" on Defendant's shoes in violation of a pretrial order in limine and that the brain matter remark was so prejudicial it could not be cured by the judge's limiting instruction. "We review a trial court's denial of a motion for mistrial under an abuse of discretion standard." *State v. Fry*, 2006-NMSC-001, ¶ 52, 138 N.M. 700, 126 P.3d 516 (internal quotation marks and citation omitted). In reviewing inadvertent remarks made by witnesses, generally, "the trial court's offer to give a curative instruction, even if refused by the defendant, is sufficient to cure any prejudicial effect." *Id.* ¶ 53. Here, the district court found that the witness's remark was "not . . . in deliberate violation of the [pretrial] order" and therefore inadvertent and curable by a limiting instruction. *See State v. Gonzales*, 2000-NMSC-028, ¶ 39, 129 N.M. 556, 11 P.3d 131 (distinguishing between inadvertent remarks made by a witness about . . . inadmissible [matters] and similar testimony intentionally elicited by the prosecutor"), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. Because the district court did not abuse its discretion in responding to the witness's unsolicited comment, Defendant was not entitled to a mistrial.

### 4.    Ineffective Assistance of Counsel

**{23}** Defendant argues that he was denied effective assistance of counsel because of his attorney's failure to (1) secure a DNA expert, (2) request a mistrial over the "brain matter" comment, (3) request a continuance before Mr. Haros's dismissal, and (4) interview witnesses. "For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice." *State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517 (internal quotation marks and citation omitted). "Without such prima facie evidence, the Court presumes that defense counsel's performance fell within the range of reasonable representation." *Id.* In this case, Defendant does not reference anything in the record that supports his ineffective assistance claim. Because we usually have insufficient information before us to evaluate an ineffective assistance claim on direct appeal, as in this case, "this Court prefers that these claims be brought under habeas corpus proceedings so that the defendant may actually develop the record with respect to defense counsel's actions." *Id. See Duncan v. Kerby*, 1993-NMSC-

011, ¶ 4, 115 N.M. 344, 851 P.2d 466 (observing that the record before the district court "may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness because conviction proceedings focus on the defendant's misconduct rather than that of his [trial counsel] . . . , [but] habeas corpus is specifically designed to address such postconviction constitutional claims and is the procedure of choice in this situation").

### 5.    Speedy Trial

**{24}**    Defendant argues that his state and federal rights to a speedy trial were violated because forty-one months elapsed between arrest and trial. As we recently clarified in *State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387, while the length of pretrial delay will trigger a speedy trial analysis, it is not alone dispositive: "Violation of the speedy trial right is only determined through a review of the circumstances of a case, which may not be divorced from a consideration of the State and the defendant's conduct and the harm to the defendant from the delay." The factors taken into account include (1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant resulting from the delay. *Id.*

**{25}**    Defendant clearly was responsible for the delay in taking his case to trial, with his disruptive and uncooperative conduct causing repeated rescheduling of his trial and a succession of appointed defense attorneys with whom he failed to cooperate. In the first twelve months, Defendant went through the first two of his appointed defense attorneys, hampering pretrial preparation and discovery; the next five months saw the entrance of new appointed counsel who had to familiarize herself with the extensive discovery, a failed plea agreement, and the defense's request for a determination of Defendant's competency to stand trial; during the next fifteen months, Defendant's court-ordered competency examinations had to be scheduled three separate times because of Defendant's repeated obstructionist behavior; his persistent refusals to cooperate with his third appointed attorney and his filing of a federal lawsuit against her finally resulted in her withdrawal; after a series of events in which Defendant filed a motion to proceed pro se and then changed his mind, the district court ordered a fourth attorney to represent him; the district court denied that attorney's efforts to withdraw after Defendant also sued him in federal court, and the case was finally brought to trial despite Defendant's obstructionist efforts. There is nothing in the record or Defendant's briefing that would indicate that the delays in this case were the result of anything but his own obstreperous conduct.

**{26}**    Defendant's claim on appeal that he asserted his speedy trial right in the district court is belied by his own obstructionist conduct that itself was the cause of a delayed trial. *See State v. Spearman*, 2012-NMSC-023, ¶ 31, 283 P.3d 272 ("[W]e accord weight to the frequency and force of the defendant's objections to the delay and analyze the defendant's actions with regard to the delay." (alteration in original) (internal quotation marks and citation omitted)).

8

**{27}** A particularly significant factor is the lack of any claim of particularized prejudice to Defendant's right to a fair trial that resulted from the delay. In *Garza*, we explained that "generally a defendant must show particularized prejudice" to his ability to defend himself and that it is only where "the length of delay and the reasons for the delay weigh heavily in defendant's favor and defendant has asserted his right and not acquiesced to the delay" that "the defendant need not show [particularized] prejudice" in order to prevail on a speedy trial claim. *Garza*, 2009-NMSC-038, ¶ 39. Defendant does not claim the loss of any exculpatory witnesses, the deterioration of exculpatory evidence, or any other kind of particularized prejudice to his defense. Accordingly, as in *Garza*, we reject Defendant's speedy trial claim. *See id.* ¶ 40 (holding that because the "other factors do not weigh heavily in Defendant's favor" and "[b]ecause Defendant failed to demonstrate particularized prejudice . . . , we cannot conclude that Defendant's right to a speedy trial was violated").

## 6.     Cumulative Error

**{28}** Defendant argues that all of the errors raised on appeal constitute cumulative error sufficient to overturn his conviction, relying on *State v. Woodward*, 1995-NMSC-074, ¶ 59, 121 N.M. 1, 908 P.2d 231 ("The doctrine of cumulative error requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial." (internal quotation marks and citation omitted)).[1] The doctrine of cumulative error "is to be strictly applied, and . . . cannot [be] invoke[d] if the record as a whole demonstrates that [the defendant] received a fair trial." *Id.* We have already concluded that Defendant did not preserve the improperly dismissed juror claim and that Defendant's remaining claims are without merit. The cumulative error claim is therefore meritless. "[W]here there is no error to accumulate, there can be no cumulative error." *State v. Saiz*, 2008-NMSC-048, ¶ 66, 144 N.M. 663, 191 P.3d 521, *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36 & n.1, 146 N.M. 357, 210 P.3d 783.

## III.    CONCLUSION

**{29}** We hold that although the district court failed to make every reasonable effort to

---

[1]Although *State v. Mendez*, 2010-NMSC-044, ¶ 22, 148 N.M. 761, 242 P.3d 328, indicates that *State v. Woodward* was abrogated on other grounds as recognized by *State v. Granillo-Macias*, 2008-NMCA-021, 143 N.M. 455, 176 P.3d 1187, this characterization is inaccurate. *Granillo-Macias* incorrectly states that *State v. Woodward* was reversed in part on other grounds by *Woodward v. Williams*, 263 F.3d 1135 (10th Cir. 2001). *See Granillo-Macias*, 2008-NMCA-021, ¶ 8. However, nothing in *Woodward v. Williams* reversed this Court's holding in *State v. Woodward*. *See Woodward v. Williams*, 263 F.3d at 1138, 1143 (recognizing two issues on appeal and upholding the New Mexico Supreme Court on the issue of exited utterance but reversing in part the defendant's federal statute of limitations claim). Accordingly, *State v. Woodward* remains good law.

9

provide an interpreter to a prospective juror, in violation of Article VII, Section 3 of the New Mexico Constitution, the unpreserved error was not fundamental error sufficient to require the reversal of Defendant's convictions. We also hold that Defendant's remaining challenges are without merit, individually or cumulatively.

{30} Accordingly, we affirm Defendant's convictions.

{31} **IT IS SO ORDERED.**

_____

**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____

**PETRA JIMENEZ MAES, Chief Justice**

_____

**RICHARD C. BOSSON, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

_____

**BARBARA J. VIGIL, Justice**

**Topic Index for _State v. Samora_, No. 32,597**

**APPEAL AND ERROR**
Cumulative Error
Fundamental Error
Harmless Error
Preservation of Issues for Appeal
Standard of Review

**ATTORNEYS**
Effective Assistance of Counsel

**CONSTITUTIONAL LAW**
New Mexico Constitution, General
Speedy Trial
Trial by Jury

**CRIMINAL PROCEDURE**

10

Mistrial
Non-English Speaking Juror
Right to Speedy Trial
Speedy Trial
Writ of Habeas Corpus

**EVIDENCE**
Disclosure
Expert Witness
Genetic Evidence

**JURIES**
Impartial Jury
Jury Selection
Right to Trial by Jury