2001-NMCA-054

28 P.3d 1124

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**James Willie SINGLETON, Defendant–Appellant.**

**No. 21,016.**

Court of Appeals of New Mexico.

June 5, 2001.

Certiorari Denied, No. 27,006, Aug. 3, 2001.

Patricia A. Madrid, Attorney General, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

*OPINION*

WECHSLER, Judge.

{1} Defendant was convicted of breaking and entering and false imprisonment. On appeal, Defendant contends that there was insufficient evidence presented at trial to support his convictions. Defendant also claims that the trial court erred in excluding a juror because he had difficulty understanding English. Defendant claims that, due to the improper exclusion of the juror, he was deprived of his right to a jury representing a fair cross-section of the community. We affirm.

*Facts*

{2} Defendant had a long-standing relationship with Sherrie Smith (Smith), the victim in this case, although the two did not live together. Defendant left Smith's home after an argument, and Smith locked the door after him. A short time later, when Smith refused to allow Defendant to reenter her home, Defendant used a borrowed screwdriver to disable the lock and gain entry. Defendant and Smith proceeded to fight, on and off, for most of that night. There was testimony that Defendant struck Smith all over her body and face and that Smith stabbed Defendant in the arm and bit his nose. When Smith attempted to call police, Defendant ripped the telephone jack out of the wall so that she would be unable to call. Smith testified that she would have left after she tried to call the police, but Defendant threatened to use the screwdriver if she tried to leave. Due to Defendant's threat, Smith did not attempt to leave her home. Smith testified that, even if Defendant had not threatened her, she would not have left because she was in her home. After fighting for some additional time, both parties were tired and lay down until the next morning when the landlady came by the house. At that time, Defendant left and the landlady called the police.

{3} On September 24, 1999, after a jury had been selected and sworn in this case, Juror Alajandro Dominguez asked to speak to the trial judge. Defense counsel, the State's counsel, and Defendant were present.

Juror Dominguez told the trial judge that he did not understand everything that had been said up to that point because his English was "not perfect." The trial judge sent Juror Dominguez back to the jury room while he and the parties discussed the problem. The trial judge explained that, under the New Mexico Constitution, a juror could not be excused because of an inability to speak English, but if Juror Dominguez remained on the jury, it would be necessary to furnish an interpreter "to both sit in the courtroom with him and to go in the jury room." The trial judge stated that no interpreter was available and proposed that the juror be allowed to leave. When the trial court asked if either side objected to excusing Juror Dominguez, both the State's attorney and defense counsel stated that they had no objection. Juror Dominguez was excused, and the alternate juror was substituted.

{4} The jury convicted Defendant of breaking and entering and false imprisonment. For the first time on appeal, Defendant argues that the excusal of the juror deprived him of a jury that represented a fair cross-section of the community. Defendant also argues that there was insufficient evidence presented at trial to support his convictions.

*Right to Jury Representing Fair Cross–Section of Community*

{5} On January 26, 2000, after the trial in this case ended, our Supreme Court issued an order denying a writ of prohibition which clarified the requirements of the New Mexico Constitution, Article VII, Section 3, *see State ex rel. Martinez v. Third Judicial Dist. Court,* Vol. 39, No. 7, SBB 12 (N.M.2000) [attached as an appendix to this opinion]. In the order, the Supreme Court explained the prohibition against the automatic exclusion of non-English speaking jurors and emphasized the importance of the availability of interpreters at every stage of the jury process.

{6} Defendant bases his main argument on appeal on this order. According to Defendant, the excusal of Juror Dominguez, based solely on his difficulty in understanding English, violated not only Juror Dominguez's right to serve as a juror, but also Defendant's right to have a jury drawn from a representative cross-section of the communi-

ty. *See* N.M. Const. art. VII, § 3 and art. II, § 14.

{7} While there is no specific reference to "fair cross-section" in the New Mexico Constitution, the right to a jury " 'drawn from a fair cross section of the community' " is implicit in the right to a fair trial. *State v. House,* 1999–NMSC–014, ¶ 100, 127 N.M. 151, 978 P.2d 967 (quoting *Taylor v. Louisiana,* 419 U.S. 522, 527, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975)); *see also* N.M. Const. art. II, § 14. The purpose of the "fair-cross-section" requirement is to ensure that jurors are qualified and impartial. *House,* 1999–NMSC–014, ¶ 102, 127 N.M. 151, 978 P.2d 967. Thus, the petit jury actually chosen need not " 'mirror the community and reflect the various distinctive groups in the population.' " *Id.* ¶ 101 (quoting *Taylor,* 419 U.S. at 538, 95 S.Ct. 692). It is the venire from which the petit jury is chosen, not the petit jury itself, that must constitute a representative cross-section of the community. *Id.* In this case, there is no indication that the venire from which the jury was drawn did not constitute a representative cross-section of the community. Therefore, Defendant's right concerning a representative cross-section of the community was not violated under Article II, Section 14 of the New Mexico Constitution.

*Right to Impartial Jury*

{8} Defendant also alludes to violation of his right to an impartial jury. Defendant's argument that he was denied the right to an impartial jury is based only on Juror Dominguez's right to serve on the jury and not on any defects in the makeup of the seated jury in this case. As Defendant argues, a juror may not be rejected solely because the juror belongs to a cognizable group. *See, e.g., Batson v. Kentucky,* 476 U.S. 79, 96–97, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (stating that equal protection clause prohibits state from using challenges to eliminate prospective jurors on basis of race); *Powers v. Ohio,* 499 U.S. 400, 415–16, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (holding that defendant's own race is irrelevant to standing to raise a *Batson* challenge); *J.E.B. v. Alabama,* 511 U.S. 127, 129–42, 114 S.Ct.

1419, 128 L.Ed.2d 89 (1994) (extending *Batson* rationale to gender discrimination and discussing equal opportunity for citizens to participate in the fair administration of justice).

{9} The New Mexico Constitution gives each citizen the right to sit upon a jury and states that such right shall not be restricted based on an inability to speak, read, or write the English language. N.M. Const. art. VII, § 3. Therefore, under our Constitution, Juror Dominguez had the right to serve as a juror and to be provided with an interpreter throughout the proceedings. Further, New Mexico courts have recognized that both the state and the defendant in a criminal action can protect the rights of prospective jurors to be free from discriminatory exclusion. *State v. Guzman*, 119 N.M. 190, 192–93, 889 P.2d 225, 227–28 (Ct.App.1994); *Powers*, 499 U.S. at 413–14, 111 S.Ct. 1364. Thus, Defendant had standing to protect the equal protection rights of Juror Dominguez, and, by extension, his own right to an impartial jury. *Guzman*, 119 N.M. at 192, 889 P.2d at 227 (stating that the regulation of juror challenges is based not only on a citizen's right to participate in jury service, but also on a defendant's right to an impartial jury); *see also Powers*, 499 U.S. at 413–14, 111 S.Ct. 1364 (explaining the nexus between a defendant's right to an impartial jury and juror's right not to be subjected to discriminatory exclusion which gives rise to defendant's standing to raise third-party equal protection claims of jurors excluded for discriminatory reasons).

{10} Although Defendant had standing to raise an equal protection claim on behalf of Juror Dominguez, Defendant made absolutely no objection below to the trial court's decision to excuse Juror Dominguez. As pointed out above, the trial judge specifically asked whether there were any objections to the excusal of Juror Dominguez and the substitution of the alternate juror. Both parties stated that they did not object. Defendant argues that his counsel's lack of objection to the excusal is not determinative of this issue on appeal. Rather, he contends (1) his failure to object was not a valid waiver of his right to an impartial jury, (2) excusal of the juror constituted a structural defect, and (3)

excusal of the juror amounted to fundamental error.

*Waiver*

{11} Fundamental rights, including constitutional rights, can be waived. *State v. Escamilla*, 107 N.M. 510, 515, 760 P.2d 1276, 1281 (1988). In particular, the right to a fair and impartial jury is a fundamental right that can be waived. *Id.; see also State v. Sanchez*, 58 N.M. 77, 84, 265 P.2d 684, 688 (1954)(citing right against self-incrimination and right to peremptory challenges as fundamental rights potentially waived or lost by the accused). Defendant argues that his counsel's action did not amount to waiver because Defendant's waiver had to be a personal, on-the-record waiver that could not be accomplished through counsel. We disagree.

{12} The same procedure is not required for a valid waiver of all constitutional rights. *United States v. Durham*, 139 F.3d 1325, 1332–33 (10th Cir.1998). Some rights are considered so personal to the defendant they necessitate inquiry into the individual defendant's decision-making process. These rights, such as the right to counsel, require an on-the-record waiver from the defendant personally. *State v. Lewis*, 104 N.M. 218, 220, 719 P.2d 445, 447 (Ct.App.1986) (stating that the right to counsel remains with accused until record affirmatively shows that the defendant intelligently and competently waived that right); *see also United States v. Joelson*, 7 F.3d 174, 178 (9th Cir.1993) (recognizing that personal rights such as right to counsel, right to go to trial, and right to plead guilty must be waived personally by defendant). Other rights generally pertaining to the conduct of trial may be waived through counsel and without an inquiry on the record into the validity of the waiver. *See, e.g., State v. Ciarlotta*, 110 N.M. 197, 200, 793 P.2d 1350, 1353 (Ct.App.1990) (explaining that waiver of right to jury trial need not be in writing and no requirement mandates that defendant be advised on the record of right); *see also Joelson*, 7 F.3d at 177–78 (concluding that defendant was presumed to assent to counsel's tactical decision not to call defendant to testify when defendant neither testified nor notified the court of

a desire to do so and that court had no duty to inform defendant of right or obtain waiver on the record); *cf. Escamilla*, 107 N.M. at 515, 760 P.2d at 1281 (suggesting that when defendant had opportunity to raise problem of juror qualification prior to rendering of verdict but waited until after verdict, court would have been inclined to find that defendant gambled on verdict and waived issue of fair and impartial jury right).

{13} The right to excuse or retain a juror is a right tied closely to a tactical decision. Generally, decisions concerning the conduct of the trial and trial tactics lie with the lawyer. *State v. Henry*, 101 N.M. 277, 280, 681 P.2d 62, 65 (Ct.App.1984). As stated in the *ABA Standards for Criminal Justice Prosecution Function and Defense Function* 4–5.2(b), at 200 (3d ed.1993),

> Strategic and tactical decisions should be made by defense counsel after consultation with the client where feasible and appropriate. Such decisions include what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and what evidence should be introduced.

{14} An attorney's tactical decision is particularly accepted when the defendant is present, aware of the circumstances, and remains silent. *United States v. Nohara*, 3 F.3d 1239, 1243–44 (9th Cir.1993) (explaining that when defendant is silent in face of attorney's decision not to call him as witness, defendant waived right to testify and there need not be a waiver on the record or duty to advise of right); *Joelson*, 7 F.3d at 177–78 (inferring waiver of right to testify from defendant's conduct and presuming defendant's assent to tactical decision of counsel); *United States v. Stephens*, 609 F.2d 230, 232–33 (5th Cir.1980) (finding waiver of defendant's right to confrontation when counsel stipulated to admission of evidence if defendant does not object and it was a legitimate trial tactic); *United States ex rel. Burnett v. Illinois*, 619 F.2d 668, 671 (7th Cir.1980) (inferring waiver from defendant's silence and concluding that defense counsel is "defendant's mouthpiece and therefore able to speak on behalf of his client").

{15} Thus, "[w]hen a defense attorney decides for reasoned strategic purposes not to make a constitutional or statutory objection to the composition of a petit jury, the defendant is bound even if the attorney fails to consult him or her about the choice." *Durham*, 139 F.3d at 1333 (discussing valid waiver by defense counsel of defective jury composition under the sixth amendment). Moreover, in this case, Defendant is not truly asserting his own right, but that of a dismissed juror. Defendant has not shown that he has been prejudiced, or even potentially prejudiced, by the excusal of Juror Dominguez.

{16} Defendant's waiver of the right to retain Juror Dominguez did not have to be an express, on-the-record waiver. The trial court informed the parties, including Defendant, of the juror's constitutional right to serve and then specifically asked if there was an objection to the removal of Juror Dominguez. Defense counsel stated that he did not object, and Defendant remained silent. By remaining silent while his counsel expressly indicated a lack of objection to the juror's excusal, Defendant waived the right to challenge the juror's removal.

*Structural Defect*

{17} Defendant claims that the juror's excusal was a structural defect and there was no valid waiver of that defect. A "structural defect [is one] that goes to the heart of the adversarial process," and is not subject to a claim of harmless error. *State v. Pettigrew*, 116 N.M. 135, 143, 860 P.2d 777, 785 (Ct.App.1993); *see also State v. Rodriguez*, 114 N.M. 265, 268, 837 P.2d 459, 462 (Ct.App.1992) (citing examples of structural defects as exclusion of defendant from court during crucial testimony, deprivation of right to counsel, and right to public trial). However, as Defendant acknowledges, a structural defect may be waived. *Cf. State v. Wilson*, 117 N.M. 11, 16–17, 868 P.2d 656, 661–62 (Ct.App.1993) (finding *Batson* challenge waived when not timely made before jury is sworn). Therefore, even if we found the existence of a structural defect in this case, Defendant waived that defect by remaining silent when the juror was excused and Defendant's attorney did not object.

### Fundamental Error

{18} Defendant argues that the excusal of Juror Dominguez amounted to fundamental error. Fundamental error arises when Defendant's "guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Baca*, 1997-NMSC-045, ¶ 41, 124 N.M. 55, 946 P.2d 1066. Such error cannot be waived. *State v. Marcos Mascarenas*, 2000-NMSC-017, ¶¶ 7, 29, 129 N.M. 230, 4 P.3d 1221.

{19} As the Supreme Court stated in *State v. Garcia*, 46 N.M. 302, 309, 128 P.2d 459, 462 (1942), fundamental error "goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." However, Defendant has not shown that he was prejudiced in any way by the juror's excusal. An alternate juror replaced Juror Dominguez at 10:15 a.m. on the day of trial before any witness had been called. The alternate juror was, like the other seated jurors, selected and approved by Defendant. *Cf. State v. Griffin*, 116 N.M. 689, 696, 866 P.2d 1156, 1163 (1993) (concluding that absent showing of prejudice, defendant could not challenge replacement of excused juror with alternate juror); *State v. Gilbert*, 100 N.M. 392, 397, 671 P.2d 640, 645 (1983) (finding no prejudice to defendant and no abuse of discretion by trial court when seated juror dismissed and replaced with alternate juror); *Pettigrew*, 116 N.M. at 141, 860 P.2d at 783 (explaining that when seated juror is excused and replaced by alternate juror prior to deliberations, defendant is considered to have been tried by the same jury and the verdict is not affected). Defendant makes no showing that the alternate juror was biased or partial or that the presence of Juror Dominguez could have affected the outcome at trial favorably for Defendant. There was no fundamental error in this case.

### Systematic Exclusion

{20} Defendant additionally contends that any juror who did not speak English would have been "systematically excluded from the jury" in this case. To the contrary, the circumstances of this case regarding Juror Dominguez are apparently unique. The trial judge and the parties were not initially made aware that Juror Dominguez might have trouble following the proceedings due to his difficulty understanding English. As evidenced by the exchange that took place between Juror Dominguez and the trial judge, there is no reason that the parties should have been alerted to the problem because Juror Dominguez was able, to some degree, to speak and to understand English. From a tape log on August 16, 1999, from the same court, in a different case but part of the record in this case, it appears that the trial judge had previously used interpreters in his courtroom. Apparently, because no one in this case was alerted to the fact that a seated juror would have difficulty understanding English, an interpreter had not been scheduled to be available for Defendant's trial. The trial judge was faced with an unanticipated situation just minutes before trial was to begin. Therefore, nothing indicates that, under different circumstances in which the court and the parties are aware of the need for an interpreter, non-English speaking jurors would be systematically excluded from serving on a jury.

### Sufficiency of Evidence

{21} Defendant was convicted of breaking and entering and false imprisonment. Defendant's only argument is that there was insufficient evidence to show that Smith was "confined against her will" for purposes of the false imprisonment conviction. On appeal, we determine "whether substantial evidence of either a direct or circumstantial nature exist[ed] to support a verdict of guilt beyond a reasonable doubt." *State v. Brown*, 100 N.M. 726, 728, 676 P.2d 253, 255 (1984). False imprisonment consists of Defendant intentionally confining or restraining Smith without her consent and with knowledge that he has no lawful power to do so. *See* NMSA 1978, § 30-4-3 (1963). False imprisonment can be based on words, acts, or gestures and does not require physical restraint of the victim. *State v. Muise*, 103 N.M. 382, 388, 707 P.2d 1192, 1198 (Ct.App. 1985).

{22} The evidence presented at trial showed that Smith wanted to leave to call police but did not, because Defendant threatened to stab her with the screwdriver if she did. Smith testified that Defendant put the screwdriver up to her side and told her that

if she tried to leave, he "would put that screwdriver through" her. Smith believed that Defendant would stab her and testified that she did not attempt to leave because of Defendant's threat. Smith's testimony was sufficient to support Defendant's conviction for false imprisonment.

*Conclusion*

{23} For the reasons discussed, we affirm Defendant's convictions.

{24} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD, Judge, JONATHAN B. SUTIN, Judge.

---

*FROM THE NEW MEXICO SUPREME COURT*

Filed January 26, 2000
No. 26,109
STATE OF NEW MEXICO, ex rel.,
SUSANA MARTINEZ,
District Attorney,
Petitioner,
versus
THIRD JUDICIAL DISTRICT
COURT, DOÑA ANA COUNTY,
HON. JERALD A. VALENTINE,
Presiding Judge, et al.,
Respondents,
and
JESUS GONZALES,
Real Party in Interest.

#### ORDER

WHEREAS, this matter came on for consideration by the Court upon petition for writ of prohibition, or in the alternative, a writ of superintending control, response thereto, and oral argument by the parties, Susan Riedel on behalf of petitioner, Melissa Reeves on behalf of respondents, and Herman Chico Gallegos on behalf of the real party in interest, and the Court having considered said pleadings and oral argument and being sufficiently advised, Chief Justice Pamela B. Minzner, Justice Joseph F. Baca, Justice Gene E. Franchini, Justice Patricio M. Serna, and Justice Petra Jimenez Maes concurring;

NOW, THEREFORE, IT IS ORDERED that the petition for a writ of prohibition, or in the alternative a writ of superintending control, hereby is DENIED for the reasons that follow. IT IS FURTHER ORDERED that the order of stay issued by this Court on December 20, 1999, hereby is LIFTED.

Article VII, Section 3 of the New Mexico Constitution states that "[t]he right of any citizen of the state to vote, hold office or sit upon juries, shall never be restricted, abridged or impaired on account of religion, race, language or color, or inability to speak, read or write the English or Spanish languages." The broad language of this provision explicitly prohibits the automatic dismissal of an otherwise qualified person based solely on their inability to speak, read or write the English or Spanish languages.

The Third Judicial District's order of November 2, 1999, is consistent with the explicit prohibition as stated in Article VII, Section 3 of the New Mexico Constitution. The order states:

2. Prospective jurors who express at any time to a member of the jury division or a deputy clerk of the Third Judicial District Court that they are unable to speak, read or write the English language, or that they are unwilling to participate as jurors on the basis of language, shall not be excused from service by any member of the jury division or by any deputy clerk on such basis. Rather, the jurors shall be instructed that their attendance at the scheduled orientation and qualification is mandatory.

This provision provides no basis for granting a writ of prohibition or superintending control.

The order further outlines a procedure for enabling citizens to exercise their rights.

3. Prospective jurors shall be informed that an interpreter will be provided to them free of charge throughout their participation as jurors, including orientation, qualification and trial.

4. Interpreters shall be provided to non-English speaking prospective jurors and jurors at every stage of the jury process including orientation, qualification and trial.

Both of these provisions protect the rights of the person called to serve as a juror.

Although the order issued by the Third Judicial District Court does not provide a basis for granting a writ of prohibition or a writ of superintending control, we emphasize that the procedures adopted in the Third Judicial District are not necessarily the only procedures that can safeguard the rights protected by Article VII, Section 3. Accordingly, this order is not intended to preclude other district courts or the Administrative Office of the Courts from exploring other procedures.

Petitioner also contends that provisions three and four of the order allow an unauthorized presence in the jury room, and as previously stated, the order is directed at the juror's right as a citizen to serve on a jury. Noting this, we believe that the use of court interpreters during jury deliberations does not constitute an unauthorized presence in the jury room. The interpreter's role is bound by ethical constraints, court rules and orders, and court instructions. To the extent that these safeguards may be breached in an individual case, the normal appellate process for correcting other trial errors will provide the most effective remedy.

The order issued by the Third Judicial District is consistent with Article VII, Section 3 of the New Mexico Constitution and existing New Mexico case law. It offers no basis for granting a writ of prohibition or for this Court to exercise its superintending control to prohibit the Third Judicial District from providing a procedure for allowing non-English speaking prospective jurors to exercise their constitutional rights as citizens to serve as jurors. Therefore we deny the petition for a writ of prohibition, or in the alternative, a writ of superintending control.

**IT IS SO ORDERED.**

---

NO. 00-8300

IN THE MATTER OF THE
AMENDMENT OF RULES 1-008.1
AND 1-088 AND THE
WITHDRAWAL OF RULE 1-098 OF
THE RULES OF CIVIL PROCEDURE
FOR THE DISTRICT COURTS

#### ORDER

WHEREAS, this matter came on for consideration by the Court upon the recommendation of the Rules of Civil Procedure for the District Courts Committee, and the Court being sufficiently advised, Chief Justice Pamela B. Minzner, Justice Joseph F. Baca, Justice Gene E. Franchini, Justice Patricio M. Serna, and Justice Petra Jimenez Maes concurring;

NOW, THEREFORE, IT IS ORDERED that the amendment of Rules 1-008.1 and 1-088 of the Rules of Civil Procedure for the District Courts hereby is APPROVED;