This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                                        **No. 29,462**

**HARLOND HAUCK,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Grant L. Foutz, District Judge**

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellee

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

Defendant Harlond Hauck appeals his conviction of aggravated battery for kicking Victim in the back, causing her permanent injury. Defendant argues that there were problems with the jury selection and with the jury, that his right to confront an officer was violated, that the district court erred in denying a jury instruction he tendered, and that his conviction is not supported by sufficient evidence. We affirm.

## I.    BACKGROUND

In this aggravated battery case, the State was required to prove that Defendant kicked Victim, intending to injure her, and that the kick caused her great bodily harm. Because Defendant raises issues both about the trial and the jurors, we divide our discussion of the facts accordingly.

### A.    Proceedings at Trial

The State began its case by putting Victim on the stand. Victim testified that she arrived at Corley Dodge to see Mr. Eric Peters and to talk about some machines that her employer leased to Corley Dodge. She explained that the employees were not cooperative. Eventually, Victim decided to remove the machines from the premises. Victim testified that Defendant then appeared, started swearing at her, and tried to stop her from taking the machines. Victim testified that Defendant then kicked her, causing her to lose control over her bowels. After dealing with the police, Victim drove to the emergency room. There, she was cleaned up, x-rayed, and given

medicine for lower back pain. Several days later, her primary care physician referred her to a specialist in Albuquerque. Seven months later, after seeing several doctors, Victim underwent back surgery for her pain.

Several witnesses provided corroborating testimony. Mr. Lyle Stewart testified that he saw Defendant kick Victim "like you would kick a football." Although equipment prevented Mr. Jerome Elwood from seeing Defendant's foot contact Victim, he testified to seeing Defendant's foot leave the ground and then immediately hearing Victim exclaim "he kicked me."

The State also called as a witness the officer who initially responded at Corley Dodge after Victim called the police. Although the officer had been subpoenaed to testify, he had stomach problems and did not appear. Defense counsel indicated that he had talked to Defendant and would agree to a telephonic interview. Defendant was sworn in and indicated that he had consulted with his attorney and understood that he had the right to confront the officer. Initially, however, he indicated that he would prefer that the officer appear. After another discussion with his lawyer, where the lawyer could be heard to indicate that the officer's testimony was "crucial," Defendant waived his right to have the officer present. The State questioned the officer and Defendant cross-examined him. The officer's testimony was somewhat helpful to Defendant, casting doubt upon the nature and extent of Victim's injuries. The

State's final witness was Dr. Jose Reyna, who had performed the surgery on Victim's spine. Dr. Reyna testified that Victim had a bone defect in her spine that made her particularly susceptible to injury. He indicated that it was unlikely that the injury had occurred prior to when Victim was kicked. He testified that the injury was consistent with being kicked in the lower spine, and that a fall would not have been enough to cause the injury. Referring to State's Exhibit 2, a picture of Victim's back taken the day after she was kicked, Dr. Reyna twice characterized the swelling from her injury as occurring on her lower back, not on her buttocks. Regarding the elements of great bodily harm, he indicated that the spine was part of the body, that Victim's spine had been impaired, and that the injury was likely to persist for the rest of Victim's life.

**B.      Selection of Jurors**

Because Defendant makes several arguments regarding jurors, we must also provide background on some of the jury proceedings. In particular, we discuss Mr. Patterson, the only African American in the jury pool and three of the Navajo speakers that were in the pool.

After voir dire, the State sought to eliminate Mr. Patterson for cause because he had come to the defense of the Corley dealership. After the district court denied the strike, the State elected to use one of its peremptory challenges on Mr. Patterson. Because Defendant had already noted that Mr. Patterson was the only African

4

American, the court asked the State to provide its reasons for striking him. The State explained that Patterson had jumped to the defense of Corley Dodge and was tied "to players in the case" because his granddaughter had married into the Corley family. Defendant noted that Patterson had candidly answered questions, had never said he could not be fair, and was the only African American in the pool. Defendant also complained that the court had denied his motions to strike for cause jurors who had negative experiences with Corley dealerships. The district court granted the peremptory strike.

After voir dire, the district court became aware of concerns that one of the Navajo-speaking jurors, Ms. Emerson, might not understand English. Emerson's juror form indicated she did not speak or understand English. However, during voir dire, she was not aided by the Navajo translator, who assisted only Ms. Begay and Ms. Henry. Defendant ultimately struck Ms. Begay, and Ms. Henry was not selected.

The State suggested questioning Ms. Emerson with the Navajo interpreter, but Defendant resisted. The district court opted not to talk to Ms. Emerson and left her on the jury. After Defendant concluded his case, the State again voiced its concern that Ms. Emerson had not understood the testimony. The judge questioned Ms. Emerson and determined that she did not understand English well enough to

understand the proceedings. Ms. Emerson was released before deliberations, and the alternate took her place. Defendant objected to Ms. Emerson's release.

**II.    DISCUSSION**

Defendant argues (1) that his *Batson* challenge to juror Mr. Patterson was improperly denied, (2) that his requested jury instruction no. 2 was improperly denied, and (3) that the evidence is not sufficient to support his conviction. We address these arguments first. Defendant also makes several additional arguments that, for various reasons, we do not address on appeal. We conclude with a discussion of these arguments and why Defendant's choices at trial preclude him from raising these issues on appeal.

**A.    Defendant's *Batson* Challenge**

After voir dire, the district court allowed the State to use a peremptory challenge against Mr. Patterson. Because Mr. Patterson was the only African American in the jury pool, Defendant had challenged the peremptory challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986). Defendant now argues that the district court erred in allowing the peremptory challenge because the State's reason for exercising its peremptory challenge was not constitutionally adequate. We review de novo the adequacy of the State's response to a *Batson* challenge. *State v. Bailey*, 2008-NMCA-084, ¶ 15, 144 N.M. 279, 186 P.3d 908.

When alleging "a violation of the principles set forth in *Batson*, [a] defendant must first make a prima facie showing that the [s]tate used its peremptory challenges in a racially discriminatory way." *Bailey*, 2008-NMCA-084, ¶ 14 (internal quotation marks and citation omitted). Once the defendant does this, the state must provide a racially neutral explanation for its peremptory challenges. *Id.* If the district court finds that the state's explanation is racially neutral, then "the burden again falls on [the defendant] to show that the reason given is in fact pretext for a racially discriminatory motive." *Id.* (internal quotation marks and citation omitted). The burden of persuasion remains with the challenger at all times. *See State v. Salas*, 2010-NMSC-028, ¶ 32, 148 N.M. 313, 236 P.3d 32.

The burden that the State must meet in showing a racially neutral explanation is not exceedingly high. For example, in *State v. Jones*, 1997-NMSC-016, ¶ 5, 123 N.M. 73, 934 P.2d 267, the Court found the prosecutor's explanation that a juror was not assertive and had failed to make eye contact to be sufficient. The Court also noted that "a reason for using a peremptory challenge is not inherently discriminatory merely because it is subjective." *Id.* More recently, in *Salas*, the New Mexico Supreme Court held as sufficient an explanation that a juror was familiar with a potential witness in the case. 2010-NMSC-028, ¶ 38. In so doing, the Court noted that "[t]he second step of this process does not demand an explanation that is

persuasive, or even plausible." *Id.* ¶ 32 (internal quotation marks and citation omitted).

Under this relatively low standard, the State's reasons for dismissing the juror were sufficient. The State noted that Mr. Patterson had jumped to the defense of Corley, and that his granddaughter had married into the Corley family. This explanation was racially neutral. It was also objective, and stronger than the failure to make eye contact upheld in *Jones*. It is similar to, and at least as strong as, the familiarity with a potential witness that was upheld in *Salas*. Accordingly, the State's reason was constitutionally adequate, and the district court was free to decide, after hearing arguments from Defendant, whether that reason was pretextual.

In the last sentence of his argument on this issue, Defendant also makes the argument, unsupported by authority, that the State's reasons could not be adequate because the district court had denied Defendant's requests to remove for cause other jurors who had unfavorable dealings with Corley Dodge. This argument confuses the standard on a motion to strike for cause with Defendant's burden in making a *Batson* challenge to a peremptory strike. But Defendant has not appealed the district court's decisions not to strike for cause the jurors who had bad experiences at Corley Dodge, and we have rejected his argument that the State's reasons for striking Mr. Patterson were not sufficient.

## B. Jury Instruction

Defendant claims it was reversible error for the district court to deny his proposed jury instruction on the elements of aggravated battery with great bodily harm. One of the elements in the contested instruction required the State to prove that "[t]he defendant touched or applied force to [Victim] by kicking her." Defendant complains only about that element, claiming it was error not to use his version, which ended "kicking her in the buttocks." Defendant contends that the addition of "in the buttocks" would have conveyed his theory that the kick was not the proximate cause of her great bodily harm. The State counters that Defendant's proposed instruction was not consistent with the evidence at trial and that the instruction that was given was an accurate statement of the law.

"An appellate court reviews challenged jury instructions to determine whether they correctly state the law and are supported by the evidence introduced at trial." *Gonzales v. N.M. Dep't of Health*, 2000-NMSC-029, ¶ 28, 129 N.M. 586, 11 P.3d 550. This is a mixed question of law and fact that we review de novo. *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. "When evidence at trial supports the giving of an instruction on a defendant's theory of the case, failure to so instruct is reversible error." *State v. Brown*, 1996-NMSC-073, ¶ 34, 122 N.M. 724, 931 P.2d 69. However, when the evidence does not support the theory, it should

not be given. *See, e.g.*, *Gonzales*, 2000-NMSC-029, ¶ 29 (upholding district court's decision not to give a mitigation instruction when the mitigation evidence was correctly excluded).

Initially, we note that the instruction that was given is an accurate statement of the law. Both Defendant's instruction and the instruction given are derived from UJI 14-323 NMRA. The contested words "kicking her" and "kicking her in the buttocks" fill a blank in the uniform instruction that is meant to be completed by using "ordinary language to describe the touching or application of force." UJI 14-323 Use Note 2. Both versions of the instruction use ordinary language to describe the touching, and both accurately state the law.

The question remains whether Defendant's proffered instruction is supported by the evidence. The language we must examine is the addition of "in the buttocks" after "defendant touched or applied force to [Victim] by kicking her." Testimony from Victim, Mr. Stewart, and Mr. Elwood indicated that Defendant had kicked Victim. However, Victim did not indicate in her testimony where she was kicked. Mr. Elwood saw Defendant's foot leave the ground, but did not see where Defendant's foot contacted Victim. Mr. Stewart testified that Defendant "kicked [Victim] in the butt," but he also said he couldn't really see Victim because Defendant was in the way. Dr. Reyna, when examining pictures of the swelling of Victim's back taken the

10

day after the injury, twice resisted Defendant's attempts to characterize the injured area as the buttocks, referring to it instead as the lower back. On this record, Defendant's requested instruction was not supported by substantial evidence, and the district court correctly rejected it.

**C.    Sufficiency**

Defendant contends that there was insufficient evidence to support his conviction. Defendant rests this argument on the notion that "evidence equally consistent with two hypotheses tends to prove neither." *State v. Garcia*, 114 N.M. 269, 275, 837 P.2d 862, 868 (1992) (alteration omitted) (internal quotation marks and citation omitted). According to Defendant, because Defendant testified that he did not kick Victim, the evidence is consistent with both the conclusion that he kicked Victim and the conclusion that he did not. This argument is consistent with neither the facts below nor the standard we apply on review.

"In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We will conclude that sufficient evidence exists if "the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established

11

beyond a reasonable doubt." *State v. Trossman*, 2009-NMSC-034, ¶ 16, 146 N.M. 462, 212 P.3d 350 (internal quotation marks and citation omitted). "However, it is well established that contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Marquez*, 2009-NMSC-055, ¶ 17, 147 N.M. 386, 223 P.3d 931 (alteration omitted) (internal quotation marks and citation omitted).

This is not a case of two equally plausible alternatives. Victim testified that her injuries were caused by Defendant kicking her. Mr. Elwood testified that Victim pushed Defendant, and that he didn't see a kick, but that he did see Defendant's foot leave the floor followed by Victim yelling that she had been kicked. Mr. Stewart testified that Defendant kicked Victim "like you would kick a football." The doctor who operated on Victim's back testified that Victim's injury was consistent with being kicked and was unlikely to have occurred prior to her being kicked. Viewed in the light most favorable to the guilty verdict below, this evidence is sufficient for a rational trier of fact to find Defendant guilty beyond a reasonable doubt.

**D.     Preservation, Invited Error, and Waiver**

There are a variety of circumstances that prevent this Court from reaching issues on the merits. For example, we will not review issues that are not preserved. *See* Rule 12-216(A) NMRA. Other circumstances that might prevent this Court from

reviewing an issue include invited error, waiver, and failure to present an adequately developed record. When an issue is not preserved, we may nevertheless choose to address it if the issue involves the general public interest, fundamental error, or the fundamental rights of a party. Rule 12-216(B).

**1. No Interpreter for Ms. Emerson**

With these rules in mind, we turn to the remaining issues. Defendant argues that the district court erred by not providing an interpreter for a juror that only spoke Navajo. The State responds that this argument was not preserved and that, in any event, Defendant either invited or waived this error. Defendant counters that, even if the issue was not preserved, this Court should review it under the fundamental error exception.

A party need not—and indeed probably cannot—preserve an argument of error regarding an action that the district court takes at the party's request. If the action is error, we say that the party invited the error. A party may not complain of invited error on appeal. *State v. Handa*, 120 N.M. 38, 45-46, 897 P.2d 225, 232-33 (Ct. App. 1995). To allow otherwise would encourage sandbagging and gamesmanship, and would undermine the goals of allowing the district court to dispose of all issues on the merits and on the record. *See State v. Nguyen*, 2008-NMCA-073, ¶ 22, 144 N.M. 197,

185 P.3d 368. Where error is invited, review under fundamental error is not available. *Handa*, 120 N.M. at 46, 897 P.2d at 233.

Defendant may not complain of this issue on appeal, as he invited the error by asking the court not to verify that Ms. Emerson would understand the proceedings and objecting to her removal once it became apparent that she had not understood the testimony. After voir dire, when the prosecutor suggested interviewing Ms. Emerson to be sure that she did not need a translator, Defendant persuaded the district court not to question her. This fact alone justifies our decision not to consider the issue. However, at the conclusion of the trial, when the court determined that Ms. Emerson did not understand English, Defendant objected to replacing her with the alternate. But replacing Ms. Emerson was the best way to avoid the prejudice Defendant now complains of. We decline to address an error that Defendant not only caused, but whose remedy he objected to.

**2. Problems with Interpreter's Oaths**

As we understand it, Defendant next argues that the interpreter was never administered the initial required oath, as required by *State v. Pacheco*, 2007-NMSC-009, ¶¶ 33-34, 141 N.M. 340, 155 P.3d 745. Defendant asserts that the failure to follow the procedure in *Pacheco* deprived him of a fair trial. Defendant acknowledges that he did not preserve the issue, but claims that review is justified under either the

14

fundamental error or the general public interest exceptions. The State contends that the issue was not preserved and that no factual record exists upon which this Court could decide the matter. The State further notes that neither of the jurors involved were ultimately chosen for the jury.

Because Defendant concedes that the issue was not preserved, we need only determine whether the fundamental error or general public interest exceptions apply. *See* Rule 12-216 NMRA. However, the New Mexico Supreme Court has already held that, because the rights implicated by interpreter oaths may be waived, unpreserved problems with interpreter oaths may not be reviewed under fundamental error. *See Pacheco*, 2007-NMSC-009, ¶ 10. In *Pacheco*, the defendant had argued that an interpreter's presence in the jury room was unauthorized unless the interpreter had sworn to additional oaths regarding participation in the jury deliberations. *Id.* ¶ 5; *see also State v. Coulter*, 98 N.M. 768, 769-70, 652 P.2d 1219, 1220-21 (Ct. App. 1982) (holding that unauthorized presence in the jury room creates a rebuttable presumption of prejudice). Nevertheless, the Supreme Court granted review under the general public interest exception because the facts created tension between the non-English speaking juror's right to serve on a jury and the defendant's right to trial by a fair and impartial jury. *Pacheco*, 2007-NMSC-009, ¶ 11. Although the Court affirmed the

15

district court, it imposed a new requirement that certain oaths be administered to interpreters immediately before and after deliberations. *Id.* ¶¶ 33-34.

The considerations that justified review under the general public interest exception in *Pacheco* are not present in this case. As in *Pacheco*, the record contains no indication that Defendant alerted the district court to the need to administer oaths to the interpreter. It is therefore not clear whether the failure of the record to include interpreter oaths is due to the fact that there were no oaths administered, or whether the oaths were given and Defendant simply failed to ensure that the oaths were contained in the record. In the face of a potentially deficient record, "we indulge every presumption in favor of the correctness and regularity of the trial court's judgment." *Id.* ¶ 13 (alteration omitted) (internal quotation marks and citation omitted). Failure to object is particularly problematic here, where alerting the court would have almost certainly guaranteed that the problem was remedied. More importantly, unlike *Pacheco*, here the translator did not take part in jury deliberations because the two jurors that used the Navajo interpreter were not seated on the jury. As a result, the tension that was present in *Pacheco* is not present here, and we decline to review the unpreserved issue under any of the preservation exceptions.

### 3.    Confrontation

Defendant also argues that his right to confront a witness was violated when he agreed to allow a sick officer to testify telephonically. The State points out that Defendant waived this right on the record, under oath, after consulting with his attorney and being fully advised of his confrontation rights. A defendant may waive constitutional rights, including the right to confront witnesses. *See State v. Herrera*, 2004-NMCA-015, ¶¶ 8-9, 135 N.M. 79, 84 P.3d 696. Whether a waiver occurred is a question of law that we review de novo. *State v. Padilla*, 2002-NMSC-016, ¶ 18, 132 N.M. 247, 46 P.3d 1247. When waiver of a constitutional argument occurs, we review only for fundamental error. *Cf. Herrera*, 2004-NMCA-015, ¶ 5 (applying fundamental error analysis due to lack of preservation after Defendant implicitly waived his confrontation rights).

A defendant may waive his confrontation rights implicitly by his conduct, including by failing to object. *See id.* ¶¶ 9, 14. In *Herrera*, the defendant waived his confrontation rights by failing to object to the use of taped deposition and by relying on those tapes at trial. *Id.* ¶ 9. Rejecting the argument that the waiver must be made explicitly by the defendant, this Court held that the failure to object was an implicit waiver of the defendant's confrontation rights, and that the decision was tactical and could be made by counsel on behalf of the defendant. *Id.* ¶¶ 9-12. Similarly, in *State*

17

*v. Singleton*, this Court characterized the right to confrontation as a tactical decision that may be waived by counsel. 2001-NMCA-054, ¶ 14, 130 N.M. 583, 28 P.3d 1124. There, a defendant's right to retain a juror was held to be waived after the court had advised the parties of the right, defense counsel had not objected to the juror's dismissal, and the defendant remained silent. *Id.* ¶ 16.

Here, Defendant explicitly waived his rights to confront the officer. Initially, defense counsel indicated that he had spoken to Defendant and Defendant agreed to allow the officer to testify by telephone. The district court swore in Defendant, who testified that he had consulted with his attorney and understood that he had the right to have the officer appear. Although Defendant indicated he would prefer that the officer was present, he explicitly waived his right on the advice of his attorney. Defendant's explicit waiver was much stronger than the implicit waiver in *Herrera*. Additionally, as in *Herrera*, Defendant relied at trial on the testimony that he now claims violated his rights. The record even contains defense counsel's tactical advice to waive the right because the officer's testimony was "crucial."

In the face of this explicitly-made tactical decision, we review the confrontation issue only for fundamental error. However, fundamental error "must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive," and does not

apply unless "guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Gallegos*, 2009-NMSC-017, ¶ 27, 146 N.M. 88, 206 P.3d 993 (internal quotation marks and citation omitted). But, as we have noted, the right to confrontation may be waived. *See Herrera*, 2004-NMCA-015, ¶¶ 9, 14. Furthermore, we have held that sufficient evidence supports the conviction. Accordingly, we decline the invitation to review this issue under fundamental error.

**III.   CONCLUSION**

For the foregoing reasons, we affirm.

**IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**CYNTHIA A. FRY, Judge**

19