This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-36618

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JOSEPH ALLEN SANCHEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**Cindy M. Mercer, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** Defendant Joseph Sanchez appeals his convictions for possession of a controlled substance with intent to distribute, contrary to NMSA 1978, Section 30-31-20 (2006), and possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1 (2001, amended 2019). Defendant raises two issues: (1) the district court erred in removing a Spanish-speaking juror, and (2) the State failed to present sufficient

evidence to support Defendant's conviction for possession of a controlled substance with intent to distribute. We affirm.

**BACKGROUND**

**{2}** The police executed a search warrant on Defendant's trailer in October 2014. Lieutenant Joseph Portio testified that the morning the search warrant was executed, he set up surveillance of Defendant's trailer and briefed the other officers on the property being searched. During the briefing, Portio identified Defendant as the target of the investigation and advised the other officers to search for cocaine, methamphetamine, heroin, and drug paraphernalia.

**{3}** When police arrived, they found a man outside working on a car that "was registered to [Defendant]." The police then knocked on the front door, found it unlocked, and entered the trailer. Four people were found inside the trailer including Estavio Sanchez, Jacob Sanchez, Stephanie Gurule, and Defendant. Estavio "admitted that [it was] his residence," and that he resided in the "west bedroom." Portio testified that "Jacob Sanchez was found in the middle bedroom," and that he was allowed to "stay in the home" because Portio did not find drugs or paraphernalia while searching Jacob's bedroom. Defendant and Gurule were found in the east side of the trailer inside the master bedroom. Gurule was arrested because of an outstanding warrant.

**{4}** Portio testified that Defendant was "advised of the search warrant" and that Defendant indicated "the only thing [they] would find [in the master bedroom] was the marijuana in a Budweiser box." However, during the search of the master bedroom, Detective Martin Benavidez also located a "pair of men's athletic shorts" on the bed with clear plastic baggies in the pockets, containing "crack cocaine." Additionally, Benavidez located "a couple of scales[,] and one or two crack pipes" in the master bedroom. Defendant was ultimately arrested for the crack cocaine and paraphernalia found in the master bedroom.

**{5}** Before voir dire, the district court informed counsel that an interpreter was not available for the "two non-English speaking jurors." One juror was moved to the "next trial" without objection from either party. However, the second juror indicated that he "[did] not need an interpreter" and was allowed to stay on the venire panel. The State recommended that Defendant's counsel inform Defendant that one of the jurors was being excused, but the district court disagreed and stated that it was defense counsel's "decision to make at this point." The trial then proceeded without any objection from Defendant or his attorney.

**{6}** The jury convicted Defendant of possession of a controlled substance with intent to distribute and possession of drug paraphernalia. Defendant appeals his convictions.

**DISCUSSION**

**I.      Excusal of Spanish-Speaking Juror**

**{7}** Defendant challenges the district court's dismissal of a "non-English speaking juror" from the venire panel, arguing the dismissal was a violation of Article VII, Section 3 of the New Mexico Constitution. The State contends that the juror's removal was not unconstitutional and even if it was error, Defendant failed to object to the error below. Acknowledging his failure to object, Defendant argues the district court's dismissal of the juror is nonetheless reviewable for structural error. For the reasons below, we decline to address the merits of Defendant's constitutional claim.

**{8}** The New Mexico Constitution gives each citizen the right to sit upon a jury and such right "shall never be restricted, abridged or impaired on account of [the] inability to speak, read or write the English . . . language[.]" N.M. Const. art. VII, § 3. "We review constitutional claims de novo." *State v. Samora*, 2013-NMSC-038, ¶ 6, 307 P.3d 328. When a defendant's objection under Article VII, Section 3 is properly preserved, we review whether the constitutional provision is violated and, if so, "reverse what would have been an otherwise valid conviction." *Samora*, 2013-NMSC-038, ¶ 15. However, when a defendant fails to preserve an Article VII, Section 3 issue, we can nevertheless review for fundamental error. *Samora*, 2013-NMSC-038, ¶ 16. Although Defendant's failure to preserve the issue would ordinarily trigger a fundamental error analysis, Defendant makes no argument that the purported error in the district court amounted to fundamental error. *See State v. Dickert*, 2012-NMCA-004, ¶ 35, 268 P.3d 515 (declining to review for fundamental error where the defendant fails to develop the argument). Rather, Defendant argues we should review the district court's dismissal of the juror for structural error.

**{9}** "A structural error is a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *State v. Nguyen*, 2008-NMCA-073, ¶ 9, 144 N.M. 197, 185 P.3d 368 (internal quotation marks and citation omitted). Notably, "[s]tructural error has been found only in a very limited class of cases." *Id.* (internal quotation marks and citation omitted). "Such errors infect the entire trial process, and necessarily render a trial fundamentally unfair." *State v. Rivera*, 2012-NMSC-003, ¶ 20, 268 P.3d 40 (internal quotation marks and citation omitted). "We review [a defendant's] claim that there was structural . . . error . . . de novo." *Nguyen*, 2008-NMCA-073, ¶ 8. However, before we analyze for structural error we must first determine if there was waiver because "a structural defect may be waived." *State v. Singleton*, 2001-NMCA-054, ¶ 17, 130 N.M. 583, 28 P.3d 1124.

**{10}** Our Supreme Court has held "that a criminal defendant who does not object to an exclusion of a juror in violation of Article VII, Section 3 has waived his or her ability to do so on appeal." *State v. Rico*, 2002-NMSC-022, ¶ 8, 132 N.M. 570, 52 P.3d 942; *see Singleton*, 2001-NMCA-054, ¶¶ 12-16 (recognizing that the constitutional right of a non-English speaking juror to serve on a jury can be waived). Accordingly, a defendant's assertion of the constitutional right for a Spanish-speaking juror to serve on the jury may be waived without an "express, on-the-record waiver." *Singleton*, 2001-NMCA-054, ¶ 16.

**{11}** By failing to object to the district court's dismissal of the Spanish-speaking juror under Article VII, Section 3, Defendant waived any structural defect that may have resulted therefrom. The district court informed both Defendant's attorney and the State about the Spanish-speaking jurors and asked both parties directly about their position on moving "those jurors to the next trial" so that they could "proceed this morning." The State indicated that it "would be comfortable with that, provided that the defense waives any right to object to it after the trial is over," and defense counsel replied, "Defense has no objection." When the State suggested that defense counsel talk to Defendant about the dismissal of the juror, defense counsel replied, "I get to speak for my client," and insisted that he "[spoke] for him a hundred times." Defendant's attorney concluded that he would ultimately "make hundreds of decisions [for Defendant] during the course of a trial" without conferring "each and every time," and did not raise any objection to the dismissal of the juror.

**{12}** Similar to the defendant in *Singleton*, Defendant argues his counsel's actions did not amount to waiver because Defendant was "kept in the dark." *See* 2001-NMCA-054, ¶ 11. Defendant attempts to distinguish his case from *Singleton* by arguing that the defendant in *Singleton* was present and remained silent, whereas here, Defendant was never informed of the juror's dismissal. *See id.* ¶¶ 14-15. However, Defendant's presence was not required for the waiver to be valid. Some of a defendant's rights are personal and "necessitate inquiry into the individual defendant's decision making process," while other "rights generally pertaining to the conduct of [the] trial may be waived through counsel and without an inquiry on the record into the validity of the waiver." *State v. Hobbs*, 2016-NMCA-006, ¶ 14, 363 P.3d 1259 (internal quotation marks and citation omitted). We have held that "[t]he right to excuse or retain a juror is a right tied closely to a tactical decision" and "decisions concerning the conduct of the trial and trial tactics lie with the lawyer." *Singleton*, 2001-NMCA-054, ¶ 13. Thus, we have made clear that "when a defense attorney decides for reasoned strategic purposes not to make a constitutional or statutory objection to the composition of a petit jury, the defendant is bound even if the attorney fails to consult him or her about the choice." *Id.* ¶ 15 (alteration, internal quotation marks, and citation omitted). Therefore, we conclude that any structural defect that may have resulted from the district court's dismissal of the Spanish-speaking juror was waived by Defendant, and we need not address the issue further. *See id.* ¶ 17.

## II.     Sufficiency of the Evidence

**{13}** Defendant challenges the sufficiency of the evidence to sustain his conviction for possession with intent to distribute because the State failed to prove that he had knowledge and control of the cocaine. The State argues that the circumstantial evidence of Defendant's knowledge and control of the contents in the master bedroom sufficiently established that Defendant had constructive possession of the cocaine. We agree with the State.

**{14}** "In reviewing the sufficiency of the evidence, the reviewing court views the evidence in the light most favorable to the guilty verdict, indulging all reasonable

inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Comitz*, 2019-NMSC-011, ¶ 16, 443 P.3d 1130 (internal quotation marks and citation omitted). "We do not reweigh the evidence and may not substitute our judgment for that of the fact[-]finder, so long as there is sufficient evidence to support the verdict." *State v. Brietag*, 1989-NMCA-019, ¶ 9, 108 N.M. 368, 772 P.2d 898. Instead, we "determine whether a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction." *State v. Romero*, 2009-NMCA-012, ¶ 10, 145 N.M. 594, 203 P.3d 125 (emphasis, internal quotation marks, and citation omitted).

**{15}** For the State to prove possession of a controlled substance, it must demonstrate that Defendant knew what the controlled substance was, knew it was in his presence, and exercised control over it. *See* UJI 14-130 NMRA (stating that "[a] person is in possession . . . when . . . he knows what it is, he knows it is on his person or in his presence and he exercises control over it"). Defendant did not actually possess the crack cocaine and thus, the State had to show that Defendant constructively possessed the drugs. "Two or more people can have possession of [the drugs] at the same time." *Id.* However, "[a] person's presence in the vicinity of the [drugs] or his knowledge of the existence or the location of the [drugs] is not, by itself, possession." *Id.* Instead, constructive possession is shown by a "rational connection between the location of the drugs [and paraphernalia] and [the] defendant's probable knowledge and control of them." *Brietag*, 1989-NMCA-019, ¶ 14.

**{16}** We look to our decision in *State v. Muniz* for guidance. 1990-NMCA-105, 110 N.M. 799, 800 P.2d 734. In *Muniz*, we held there was sufficient evidence that the defendant constructively possessed drugs found in a home where police believed the defendant resided, even though an entire family appeared to be occupying the home when police arrived. *Id.* ¶¶ 5, 15. The defendant was not present in the home at the time police executed the search warrant; however, the police located envelopes with the defendant's name in the room where the drugs were found. *Id.* ¶ 11. Somewhere in the home police located a "black book" that the defendant admitted belonged to him, which contained names and "coded numbers," along with other evidence suggesting that the defendant trafficked drugs. *Id.* ¶¶ 3, 16. In *Muniz*, we concluded that viewing the evidence in the light most favorable to the state, there was sufficient evidence to support the defendant's conviction for possession of marijuana with intent to distribute. *Id.* ¶ 17.

**{17}** In this case, viewing the evidence in the light most favorable to the verdict, we conclude there was circumstantial evidence of constructive possession sufficient to support Defendant's conviction. *See Brietag*, 1989-NMCA-019, ¶ 12 (noting that "to sustain [a] defendant's convictions, we must determine whether there were incriminating statements or circumstances tending to support an inference that he constructively possessed the drugs"). Here, like in *Muniz*, there were several people that resided in the trailer. However, not only was Defendant found inside the bedroom where the drugs were located, he admitted he lived in the trailer, police "found mail that showed [Defendant] received mail there," and police identified the master bedroom as the room Defendant "occupied." Moreover, like in *Muniz* where the defendant admitted to

knowledge of a belonging inside his residence, Defendant admitted he knew the location of marijuana inside his bedroom. Specifically, Defendant identified where in his bedroom officers could locate a "[Budweiser] box with marijuana," which officers found in the closet of the master bedroom precisely where Defendant "pointed out" the box with drugs would be located. *See State v. Phillips*, 2000-NMCA-028, ¶ 12, 128 N.M. 777, 999 P.2d 421 (explaining that the "[d]efendant's own incriminating statements" can be relied upon by a rational jury to conclude that constructive possession existed); *Brietag*, 1989-NMCA-019, ¶ 14 (stating that when drugs are found "in close proximity to [the defendant's] personal belongings," sufficient circumstances may exist "to link him with the possession of those drugs [and paraphernalia]"). Furthermore, "large men's size style shorts" containing cocaine in the pockets were found on the bed in Defendant's bedroom. The district court admitted the shorts into evidence, which the jury had an opportunity to view during trial and deliberations. According to Portio, the shorts could have belonged to either a male or female but attributed them to Defendant because they were found in his residence in "the room he occupied." Because the men's shorts were admitted into evidence, the jury had the opportunity to view Defendant's size and stature as well as examine the men's shorts during trial and deliberations and therefore, may have considered this circumstantial evidence that the men's shorts in which the cocaine was found belonged to Defendant. *See Phillips*, 2000-NMCA-028, ¶ 7 (stating that "[c]ircumstantial evidence may be sufficient to support a verdict for constructive possession, as long as a rational jury has necessarily found the hypotheses of guilt more reasonable than any of the theories of innocence advanced by the defendant" (internal quotation marks and citation omitted)).

**{18}** Defendant also argues that since more than one person occupied the room, there was insufficient evidence that Defendant possessed the crack cocaine. If more than one person occupies the room where the drugs were found, the "defendant could also have had sufficient knowledge and control to be in constructive possession" if the State demonstrates a "link establishing [the] defendant's knowledge and control." *Muniz*, 1990-NMCA-105, ¶ 15. We note that the evidence only established Gurule was "found" in the master bedroom; there was no testimony or evidence indicating that she lived there or that any of her belongings were located in the bedroom. Nonetheless, as discussed above, there was sufficient evidence of knowledge and control to show Defendant constructively possessed the crack cocaine. Therefore, we hold that there was sufficient evidence to support Defendant's conviction for possession of a controlled substance, with intent to distribute.

## CONCLUSION

**{19}** For the foregoing reasons, we affirm.

**{20}** **IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JACQUELINE R. MEDINA, Judge**